Isaac Shelby, Complainant, *v.* John Bacon, Alexander Syming-ton, Thomas Robins, James Robertson, Richard H. Bayard, James S. Newbold, Herman Cope, Thomas S. Taylor, and George Beach.

By a statute of Pennsylvania, passed in 1836, "assignees for the benefit of credit-ors and other trustees" were directed to record the assignment, file an inventory of the property conveyed, which should be sworn to, have it appraised, and give bond for the faithful performance of the trust, all of which proceedings were to be had in one of the State courts.

This court was vested with the power of citing the assignees before it, at the in-stance of a creditor who alleged that the trust was not faithfully executed.

The assignees of the Bank of the United States chartered by Pennsylvania, recorded the assignment as directed, and filed accounts of their receipts and disbursements in the prescribed court, which were sanctioned by that court.

A citizen of the State of Kentucky afterwards filed a bill in the Circuit Court of the United States for the Eastern District of Pennsylvania, against these assignees, who pleaded to the jurisdiction of the court.

The principle is well settled, that where two or more tribunals have a concurrent ju-risdiction over the same subject-matter and the parties, a suit commenced in any one of them may be pleaded in abatement to an action for the same cause in any other.

But the proceedings in the State court cannot be considered as a suit. The statute was not complied with, and even if it had been, the Circuit Court would still have had jurisdiction over the matter.

This cause came up on a certificate of division of opinion between the judges of the Circuit Court of the United States for the Eastern District of Pennsylvania.

The complainant was a citizen of Kentucky, and the de-fendants were all citizens of Pennsylvania. The latter (under three assignments bearing date the 7th of June and the 4th and 6th of September, 1841) were trustees of the Bank of the United States, a banking institution incorporated by the Legis-lature of the State of Pennsylvania, by an act passed on the 18th day of February, 1836.

It appeared that the bank, being unable to meet its liabilities, made an assignment of a part of its property on the 1st of May, 1841, to certain trustees, to secure the payment of sundry post-notes, held by certain banks of the city and county of Philadelphia. Afterwards, on the 7th of June, 1841, it made another assignment of a portion of its property to the defend-ants Bacon, Symington, and Robins, in trust to secure the pay-ment of its bank-notes and deposits. Subsequently, two other assignments were made by the bank to the defendants Robert-son, Bayard, Newbold, Cope, and Taylor, in trust for the pay-ment of its debts generally, the first of which was executed on the 4th, and the other on the 6th of September, 1841. These several assignments were duly recorded, and the trustees ac-cepted and proceeded to minister the trusts.

The bill and amended bill, after setting forth the chartering

Shelby *v.* Bacon et al.

of the bank, and the assignment of its property to the defend-
ants in trust, alleged that on the 6th day of September, 1841,
one George Beach, a citizen of Pennsylvania, recovered a judg-
ment in the District Court for the city and county of Philadel-
phia, against the said bank, for the sum of $ 53,688.66, besides
interest and costs; that this judgment was founded on promis-
sory notes of said bank, called post-notes.    That subsequently
the said George Beach, in a suit on said judgment, in the
Commercial Court of New Orleans, recovered a judgment for
the sum of $ 53,688.66, with interest thereon and costs; on
which the sum of $ 4,075 was paid; and that the residue of
both said judgments remains unpaid.    The bill then alleged,
that through several mesne assignments the complainant be-
came invested with all right under said judgments; that the
debt due is provided for in said assignments, but that the
trustees have refused to pay any part thereof; and that they
have kept complainant and other creditors in ignorance of the
situation of the trust funds.    Prayer for a decree for an account
of the trust, for the payment of complainant's debt in full or a
distributive share thereof, and for general relief.

The defendants Robertson, Bayard, Newbold, Cope, and
Taylor pleaded as follows: —

" That the said corporation mentioned in said complainant's
bill, viz. the President, Directors, and Company of the Bank
of the United States, incorporated by the State of Pennsylva-
nia, and having its banking-house and chief place of business
in the city of Philadelphia, did, on the fourth and sixth days
of September, in the year one thousand eight hundred and
forty-one, execute and deliver to these defendants assignments
and transfers of certain property upon trusts therein particular-
ly set forth, — as by reference to copies of said assignments at-
tached hereto, and made by reference part of this their plea,
will fully and at large appear; that said assignments, after
having been duly proved, were afterwards, to wit, on the fourth
and seventh days of September, A. D. 1841, recorded, according
to the statute of Pennsylvania in such case made and provid-
ed, in the office for the recording of deeds, &c., for the city and
county of Philadelphia, — the execution of the trusts thereof
having been previously accepted by these defendants.  And
these defendants further aver, that, in accordance with the pro-
visions of the laws of the said State of Pennsylvania, full and
complete jurisdiction of and over the said trust fund so con-
veyed to these defendants, and of and over the execution of
the said trusts, and of and over these defendants personally, as
trustees as aforesaid, was and is vested in the Court of Com-
mon Pleas of the city and county of Philadelphia, which now

has cognizance of the same, with ample power and authority in said tribunal to enforce the execution of the said trusts, to decide upon the rights of all parties claiming an interest therein, and right and justice fully to administer in the premises; that, in the execution of the trusts aforesaid, and the collection of the assets so assigned to them, these defendants have been governed by the laws of Pennsylvania, and, among other things, by certain laws of the said State, by which they have been compelled to accept and receive from their debtors, in payment of debts due to the said bank or to the said trustees, at par, the notes and other evidences of debt issued or created by the said bank; and the defendants further aver, that, having in part executed the trusts so as above committed to them, they did, on the seventh day of January, A. D. 1843, file in the office of the prothonotary of the Court of Common Pleas aforesaid an account, duly verified, of their receipts and disbursements, and of their acts and doings, as trustees as aforesaid, from the commencement of said trust down to the first day of January, A. D. 1843; and subsequently, to wit, on the thirteenth day of January, A. D. 1844, they did file a further account in the office aforesaid, and duly verified as aforesaid, of their receipts and disbursements, acts and doings, as aforesaid, down to the first day of January in the year 1844, which said accounts were absolutely confirmed by the said court, agreeably to the laws of the said State; and the defendants further aver, that on the seventeenth day of January, 1845, and on the thirteenth day of January, 1846, respectively, they filed additional accounts as aforesaid, in the office aforesaid, showing their receipts and disbursements, acts and doings, aforesaid, down to the first day of January, A. D. 1846, which said last-mentioned accounts were referred by the said court to auditors, who have made reports thereon, respectively, to the said court; and the defendants further aver, that, on the fourteenth day of January, A. D. 1847, they filed another account as aforesaid, showing their administration of said trust down to the first day of January, A. D. 1847, which said last-mentioned account was likewise referred by the said court to auditors, before whom the same is now pending, — as by reference to the records of the said court will fully appear; and these defendants further aver, that, in pursuance of the direction and decree of the said court, they have distributed and paid over large sums of money, being the proceeds of the assets assigned to them as aforesaid, and have likewise, under the direction of the said court, invested large sums of money to await the result of pending litigation, and in all other respects have conformed to the directions of the said court in relation to the trust aforesaid.

" All which matters and things these defendants do ever to be true, and plead the same to the whole of the said bill, and humbly demand the judgment of this honorable court, whether they ought to be compelled to make answer to the said bill of complaint; and humbly pray to be hence dismissed, with reasonable costs and charges in this behalf most wrongfully sustained."

The other defendants pleaded the same plea in substance, *reddendo singula singulis.*

The cause coming on to be heard on the amended bill and pleas, the judges were divided in opinion on the following points.

" First. Whether the facts stated in the plea to the amended bill filed by John Bacon, Alexander Symington, and Thomas Robins, deprive this court of jurisdiction of the case, and whether the said plea is a sufficient plea to the plaintiff's bill, and ought to be allowed.

" Second. Whether the facts stated in the plea to the amended bill, filed by the defendants, James Robertson, Richard H. Bayard, James S. Newbold, Herman Cope, and Thomas S. Taylor, deprive this court of jurisdiction of the case, and whether the said plea is a sufficient plea to the plaintiff's bill, and ought to be allowed."

The following sections of the Act of Assembly of Pennsylvania, of 14th June, 1836, were relied on in argument, and are therefore inserted.

" Sect. VII. It shall be lawful for the Court of Common Pleas of the proper county, on the application of any person interested, or co-trustee or co-assignee, to issue a citation to any assignee or trustee for the benefit of creditors, whether appointed by any voluntary assignment, or in pursuance of the laws relating to insolvent debtors and domestic attachments, requiring such assignee or trustee to appear and exhibit, under oath or affirmation, the accounts of the trust in the said court, within a certain time, to be named in such citation.

" Sect. IX. The several Courts of Common Pleas shall, by a general order, or by such order as the circumstances of any particular case may require, direct the prothonotary of the same court to give notice of the exhibition and filing of every account as aforesaid, during such time, and in such public newspapers, as they shall appoint, setting forth in such notice, that the accounts will be allowed by the courts at a certain time, to be stated in such notice, unless cause be shown why such account should not be allowed.

" Sect. XI. Whenever it shall be made to appear in a Court of Common Pleas, having jurisdiction as aforesaid, that an as-

She  v..Bacon et al.

signee or trustee as aforesaid has neglected or refused, when required by law, to file a true and complete inventory, or to give bond with surety, when so required by law, or to file accounts of his trust, or that such assignee or trustee is wasting, neglecting, or mismanaging the trust estate, or is in failing circumstances, or about to remove out of the jurisdiction of the court, in any such case it shall be lawful for such court to issue a citation to such assignee or trustee to appear before the court, at a time to be therein named, to show cause why he should not be dismissed from his trust.

" Sect. XII. On the return of such citation, the court may require such security, or such other and further security from such assignee or trustee, as they may think reasonable, or may proceed at once to dismiss such assignee or trustee from the trust.

" Sect. XIII. The like proceedings may be had whenever it shall be made to appear to such court, that any person who shall have become surety for any assignee or trustee as aforesaid, in any bond, given for the due execution of the trust, is in failing circumstances, or has removed out of this Commonwealth, or signified his intention so to do."

The case was argued by *Mr. Clay,* for the complainant, and by *Mr. Wm. A. Porter* and *Mr. George M. Wharton,* for the defendants.

*Mr. Clay,* for complainant.

The Bank-of the United States, chartered by the State of Pennsylvania, having become insolvent, executed several deeds of trust conveying all their assets for the purpose of paying their debts, according to classifications of them described in the said deeds. By two of the same deeds provision was made for the payment of the debt of the complainant, to recover satisfaction for which is the object of this suit. That debt originally existed in the form of post-notes. These post-notes were reduced to a judgment, in the name of George Beach, obtained in the Court of Common Pleas of Philadelphia. This judgment, by various assignments, was transferred to the complainant, and became his property.

The defendants refused to pay the amount of this judgment. They refused even to recognize the complainant as one of the creditors of the bank, who was entitled to a ratable proportion of the assets of the bank, transferred to the defendants, in common for his benefit and that of other creditors.

It was under these circumstances that the complainant instituted this suit. The objects of this suit were, first, to compel the defendants to admit the complainant as one of the cred-

itors, to receive his distributive share of the common fund; second, to have an account of the execution of the trust, as far as the defendants had proceeded in it; third, to compel the defendants to complete the execution of the trust, by collecting, selling, and distributing all the assets on which they have not previously administered.

The complainant is a citizen of Kentucky, and the defendants are citizens of Pennsylvania. The parties, therefore, stand exactly in that relation to each other, which, according to the provision of the Constitution of the United States and the law of the United States, entitled the Federal judiciary to entertain jurisdiction of the controversy. In consequence, the complainant brought this in the Circuit Court of the United States for the Eastern District of Pennsylvania.

The defendants pleaded to the jurisdiction of the court. Their plea, in substance, is, that by the local laws of Pennsylvania jurisdiction is conferred upon one of her local tribunals over all matters of trust, to control, manage, and finally and exclusively to settle and close them. That the defendants have proceeded before that tribunal, in part, to settle and account for the assets which they have received; and that they are only amenable to that local tribunal for the further and complete execution of the entire trust.

The two judges composing the Circuit Court of the United States for the Eastern District of Pennsylvania, being divided in opinion as to the sufficiency of this plea to the jurisdiction of the court, certified that difference, and the question and only question which this court has now to determine is, whether the Circuit Court had or had not jurisdiction of the cause.

That question involves two others;—first, had the complainant a right, by the Constitution and the law of the United States, to resort to the Federal tribunal; and secondly, whether he could be divested of that right by the laws of any State, in the passage of which he had no voice. To which may be added a third question, and that is, whether, if the State of Pennsylvania could divest a citizen of Kentucky of a right with which he is invested by the Constitution of the United States, that has been done by the laws of that State, and the proceedings which have taken place under them.

The mere statement of these questions is an answer to them. The Constitution of the United States expressly confides to the Federal judiciary all controversies arising between citizens of different States. It is the constitutional privilege, therefore, of a citizen of one State to sue a citizen of another State in the tribunal which is common to them both. He cannot be deprived of this right by any act of the State of which he is

not a citizen. Nor is this right at all impaired or affected by the nature or object of the suit which he prosecutes. It cannot be contended, that, because the subject-matter of controversy arises out of the local laws of a State, he is bound to submit to the tribunals of that State, and is stripped of his privilege to appeal to the Federal tribunal. It is true, when he goes before the latter, that is bound, in the particular case, to administer the laws of the State which govern it. But the Constitution of the United States is founded on the presumption, that the Federal judiciary will be less biased and more impartial in the administration of justice between citizens of different States than the local tribunal of one of them would be.

If, by any arrangement of its own laws and tribunals, a State or Legislature of a State could divest the Federal judiciary of that branch of its jurisdiction which relates to controversies between citizens of different States, it might, by other or similar arrangements, divest their judiciary of all judicial power granted to it by the Constitution of the United States.

So careful has Congress been to preserve to the citizens of different States their right to be heard before the Federal tribunal, that it has provided, by the act of 1789, that when a citizen of one State is sued by a citizen of another State, in a State court, the defendant may remove the cause into the Federal court.

It is not, therefore, true, as a universal proposition, that in cases of concurrent jurisdiction the court that first acquires it can hold fast on the case, to the exclusion of the concurrent court.

If the defendant fail to avail himself of his privilege to remove the cause in due season, he deprives himself of the benefit of the Federal tribunal, and is bound to submit to the local jurisdiction. But it is not pretended that the complainant in this cause has ever waived his right to the Federal jurisdiction. He was no party to the proceedings of the trustees in the Court of Common Pleas of Philadelphia. No process from that court was ever served upon him; no opportunity ever existed, therefore, for him to remove the cause from the local to the Federal tribunal. And if such opportunity had presented itself, the complainant, being only one of the numerous persons concerned in the trust, could not have removed the settlement of the accounts of the trustees from the Court of Common Pleas of Philadelphia to the Circuit Court of the United States.

I submit, then, with great confidence, to the court, that the Constitution of the United States, which is paramount to all State constitutions and laws, having secured to Isaac Shelby,

the complainant, a citizen of Kentucky, the privilege of bring-ing his suit in the Circuit Court of the United States against the defendants, citizens of Pennsylvania, the power of that State is incompetent to deprive him of that privilege. Upon an examination of the laws of Pennsylvania in relation to trusts, the settlement of trustees' accounts, and the distribution of trust funds, it will be found, I think, that the jurisdiction conferred on the several Courts of Common Pleas was only preliminary and precautionary, and not final and absolutely conclusive. The object was, on the one hand, to exert a salutary supervisory authority over the trustees, to prevent the waste and misapplication of the trust funds, and, on the other, to afford protection and security to the trustees, by the sanction of a court of justice, in the periodical settlement of their accounts, and in the investment and distribution of the trust funds.

The provisions in the laws of Pennsylvania bear a strong similitude to the laws which prevail in all the States, in respect to the settlement of the accounts of executors and administrators. The County Courts and the Courts of Probate have full jurisdiction over executors and administrators, their removal, the settlement of their accounts, and the final distribution of the estates of the deceased. It has never been thought or contended that their jurisdiction excludes that of courts of justice, to which appeals are made for a revisal of the conduct and accounts of such executors and administrators; and on such appeals, what has been done under the sanction of the County Court or Court of Probate will be so far respected as to be presumed to be rightly done, and the *onus probandi* will be thrown on the party impeaching it. So, in a case of the settlement of a trustee's account before the Court of Common Pleas, the account will be held *primâ facie* evidence of a proper settlement, until the contrary be shown by the party contesting it.

Assuming that the Court of Common Pleas has any *exclusive* jurisdiction over these trusts and their administration, what is the extent of that exclusive jurisdiction? It must be limited to what has been actually done by that court, or is now pending before it. It cannot extend to the question, for example, of the rights of Isaac Shelby, which are not submitted to that court. It cannot extend to what remains to be done in the execution of the trust, that is to say, in collecting outstanding debts, selling real estate and other property not yet disposed of, collecting the proceeds of sale, &c., &c. These are matters which are not *now* before the Court of Common Pleas, which may never be brought by the trustees before it, but which are properly and legitimately included in this suit.

I made an examination into the laws of Pennsylvania in respect to trustees some time ago, and regret I have been unable to refresh my recollection of them by a perusal at this time. If my memory does not deceive me, they recognize, if they do not expressly authorize, the investigation of the conduct of trustees before other tribunals than the Court of Common Pleas.

*Messrs. Porter* and *Wharton,* for the defendants.

The judgment on which the complainant claimed was recovered after the assignments, and was assigned to him after the accounts of the trustees had been settled in the Common Pleas of Philadelphia, without exception or appeal. The complainant claims subject to the assignments, and not against them. When he took the transfer of the judgment, he was bound to inquire what had been done or permitted by his assignors. It is a fair legal presumption, that he knew the accounts had been filed in the Common Pleas, and that the jurisdiction of that court had attached to the subject-matter of the trust. Shall he be allowed to upturn what has been done in that court?

The law of Pennsylvania is, that such accounts, although partial, are nevertheless conclusive in favor of the accountants, when properly filed, settled, and confirmed. Moore's Appeal, 10 Barr, 435; Weber *v.* Samuel, 7 Barr, 499. The trustees have relied on this principle, and have regulated their conduct by it. Shall they have its protection? or shall they be required to resettle their past, and file their future accounts in the Federal court?

The argument of the complainant's counsel assumes that there is no such thing as a proceeding, and an adjudication *in rem,* which, by its operation on the subject-matter, shall bind the world, no matter who the parties claimant may be, or where they may reside. In the case of a vessel seized under a replevin issued out of a State court, and process subsequently issued out of the admiralty against the same vessel, the former retains the jurisdiction. Taylor *v.* Royal Saxon, 1 Wallace, jr. 311. Here the suitor was turned out of the admiralty, not for any defect in his cause of action, nor because the question had been decided, but because the replevin was pending in the State court. In the case of an attachment of money in the State court, and an action against the debtor in the Federal court, the former, having first obtained possession of the subject, retains jurisdiction over it. Wallace *v.* McConnell, 13 Peters, 136. The question is not as to the original right of the party to come into this court, but is it a proceeding *in rem?* Has

jurisdiction attached? Would it produce collision of jurisdiction to disturb it?

In opposition to the complainant's positions, the defendants take the following grounds: —

1. The party assignor, the Bank of the United States, being a corporation created by an act of the Legislature of Pennsylvania, was a local corporation, and, so far as a corporation can be such, was a resident or inhabitant of that State, was liable for its debts in the manner prescribed by the laws thereof, and could only dispose of its property by virtue of the said laws.

2. That becoming insolvent, and, in consequence thereof, making an assignment to secure the payment of its debts, the validity and effect of the assignment are to be determined and regulated by the laws of Pennsylvania.

3. That the administration of the assets, under such an assignment, should be in accordance with the laws of Pennsylvania, and under the direction of the tribunal, and according to the rules, which those laws have prescribed.

4. That a suit like the present, brought to administer the trusts of the assignment of an insolvent local corporation, made to citizens of the same State, in order to secure the payment of its debts, in pursuance of the laws of that State, which control and regulate the whole subject-matter, is not within the jurisdiction of the courts of the United States.

5. That even if the foregoing proposition be not correct, the jurisdiction of the State court had attached, by the filing therein of their partial accounts by the trustees of the bank, and jurisdiction over the subject-matter of these trusts having thus become vested in the State tribunal, the United States court could not withdraw the same therefrom.

6. That the trustees, being subject to the jurisdiction of the State court, and having partially settled their accounts under its authority, are compellable to settle their future accounts before the same tribunal; and, if the present bill be sustained, will be also compelled to adjust and settle, at additional expense to the trust estate, their accounts in a court of the United States, which may be governed by different rules from the State court, and may adjust the same accounts upon different principles.

That court which first rightfully takes possession of the subject, or in which suit has been first commenced, or application made, or petition presented, or writ issued, shall retain the jurisdiction until a final disposition is made of the matter in controversy. Smith *v.* McIver, 9 Wheaton, 532; Pratt *v.* Northam, 5 Mason, 95; Merrill *v.* Lake, 16 Ohio, 373; Ship Robert Ful-

6 *

ton, 1 Paine, 620; Peck v. Jenness, 7 Howard, 612; Campbell v. Emerson, 2 McLean, 30; Embree v. Hanna, 5 Johns. 101; Holmes v. Remsen, 20 Johns. 229; Hall v. Dana, 2 Aiken, 381; State v. Yarborough, 1 Hawks, 78.

The jurisdiction of the Common Pleas of Philadelphia has attached to the settlement of the trusts by the filing of the accounts. That court has had exclusive possession of the subject for several years. Not only have proceedings been had, but questions have been decided and decrees entered. Why should the filing of a petition, or issuing of a writ, fix the jurisdiction, and not the filing and adjustment of an entire account, the decree of the court on it, and the distribution of the balance exhibited by it? Why should matters of form work such important differences in result?

But what is the subject-matter to which the jurisdiction of the State court has attached? We answer, the entire trust which the trustees have undertaken to execute, — the duties, and responsibilities imposed by the assignment, — the rights conferred by the property conveyed by it.

- It is said, Why not allow the past accounts to remain stable, and compel the trustees to file their future accounts in the Federal court? The answer is, All the accounts are but parts of a whole, conclusive so far as they go, but unfinished parts of the same thing. Until the last account is filed, the work is incomplete. The future accounts, if filed in the Circuit Court, must start with the balances ascertained in the Common Pleas accounts, and must contain items similar to those embraced in the former accounts. That court has considered these items, and entered decrees upon them. The Circuit Court may make a different decision on the same subject. This is the collision of decision which it is the policy of the law to prevent, and which the rule regulating cases of concurrent jurisdiction was intended to prevent.

In regard to the sixth and last proposition submitted, it will not be contended that this court has any power to terminate the proceedings in the Common Pleas. Other creditors have obtained rights which that court will not allow to be defeated. The statute of Pennsylvania directs attachment and imprisonment if the trustee refuses to file his account, and this court has no power to deliver him. The trustees in this case cannot remove the proceedings into the Federal court, because they are not defendants in the State court, as the Judiciary Act requires, and they are citizens of Pennsylvania, and not of another State. Whatever be the result of the present application, they will be obliged to continue to file their accounts in the State court. The practical consequences are easily foreseen.

They must give public notice to creditors to claim the same fund in two courts. A portion of the creditors will prove their debts in the Common Pleas, and the remainder in the Circuit Court. Some may claim in both places. A creditor excluded by one tribunal may apply to the other. The courts may readily differ in their views of the facts presented by the accounts, and the principles regulating them. One court may surcharge with one amount, and the other with a different amount. A dividend of fifteen per cent. may be declared in one court, and of twenty in the other. How are the trustees to pay? If payment be made, with what balance shall the succeeding account start? At whose expense will the litigation be conducted?

If the prayer of the bill be granted, the complainant is not benefited; if refused, he is not injured. If he alleges an error, he may go into the Common Pleas, and move to open the accounts. This court will not have surrendered any power which it possesses. It will only have said, that, as the complainant stood by while the settlements were made, it is too late now to open them. The effect on the trustees of granting the prayer deserves attention. They are officers of the law, and are engaged in executing a public trust. Their office is difficult and responsible, and they are entitled to the highest protection the law can afford them. A protracted litigation must withdraw their time and attention from the execution of their trust, without an equivalent advantage.

Mr. Justice McLEAN delivered the opinion of the court.

This case comes before us from the Circuit Court of the Eastern District of Pennsylvania, on a certificate of a division of opinion between the judges.

The complainant, who is a citizen of Kentucky, filed his bill against John Bacon and others, assignees of the late Bank of the United States under the charter from the State of Pennsylvania. The bank, being in a failing condition, executed assignments of its assets for the benefit of its creditors, and of certain creditors of the Bank of the United States chartered by Congress.

The complainant represents himself to be a creditor of the late bank, to a large amount, which is shown by judgments recovered in the "District Court" for the city and county of Philadelphia; and in the Commercial Court of New Orleans. That, on application to the trustees aforesaid, they refused to pay the said judgments or any part of them, although they have funds in their hands or under their control, to pay the debts of the bank, &c.

The defendants pleaded to the jurisdiction of the court. They admit the trust as alleged, and aver that the assignments were recorded as required by the acts of Pennsylvania; and they aver that the Court of Common Pleas of the city and county of Philadelphia has ample power to enforce the trust, in regard to the rights of all parties claiming an interest therein. That the defendants under those laws, at different periods down to the 1st of January, 1847, filed their accounts, duly verified, "of their receipts and disbursements, with the prothonotary of the said court," which were sanctioned by the court. That under its direction they have vested large sums of money to await the result of pending litigations. And they submit to the court whether they ought to be compelled to answer.

On the hearing the judges were opposed in opinion on the following points: —

1. Whether the facts stated in the plea to the amended bill filed by John Bacon, Alexander Symington, and Thomas Robins, deprive the court of jurisdiction of the case; and whether the plea to the plaintiff's bill is sufficient and ought to be allowed.

2. Whether the facts stated in the plea to the amended bill filed by the defendants James Robertson, Richard H. Bayard, James S. Newbold, Herman Cope, and Thomas S. Taylor, deprive the court of jurisdiction of the case, and whether the said plea is a sufficient plea to the plaintiff's bill, and ought to be allowed.

There is no principle better settled, than that, where two or more tribunals have a concurrent jurisdiction over the same subject-matter and the parties, a suit commenced in any one of them may be pleaded in abatement to an action for the same cause in any other. And the question we are now to consider is, whether the procedure in the Court of Common Pleas, above stated, under the special acts of Pennsylvania, abates the suit of the plaintiff.

Can the proceeding stated in the plea be considered a suit? The revised act of Pennsylvania, of the 14th of June, 1836, entitled, "An Act relating to assignees for the benefit of creditors and other trustees," requires in the first six sections the assignment to be recorded in thirty days, and the assignment being voluntary, "the assignees shall file an inventory or schedule of the estate or effects so assigned, which shall be sworn to"; on which it is made the duty of the court to appoint appraisers, who shall return an inventory and appraisement; on the return of which the assignees are required to give bond "to the Commonwealth, that they will in all things comply with the provisions of the act of Assembly, and shall faithfully execute the

trust confided to them," &c. The defendants aver, " that having in part executed the trust so as above committed to them, they did, on the 7th of January, 1843, file in the office of the prothonotary of the Court of Common Pleas aforesaid an account, duly verified, of their receipts and disbursements," &c. And several other and similar returns are averred to have been made.

By the seventh section of the act, the court are authorized, on the application of any person interested, to issue a citation to any assignee or trustee for the benefit of creditors, whether appointed by a voluntary assignment or in pursuance of the laws relating to insolvent debtors, &c., requiring him "to appear and exhibit, under oath or affirmation, the accounts of the trust in the said court," &c. The ninth section authorizes the court to give notice, by publication, when the accounts will be acted on, that objections to them may be made. And by the eleventh section, where a trustee has neglected or refused, when required by law, to file a true and complete inventory, or to give bond with surety, when so required by law, or to file the accounts of his trust, " it shall be lawful for the court ", (of Common Pleas) "to issue a citation, &c., to show cause why he should not be dismissed."

Now it does not appear from the plea that the assignees ever filed the inventory of the assets in their hands with the prothonotary of the court, as required by the first section, and it would seem that not only the inventory must be filed, where the assignment is voluntary, to give jurisdiction to the court, but also that it must be sworn to, an appraisement of the trust property made and returned, and bond given by the assignees. This is a proceeding under a statute, and to bring the case within the statute, every material requirement of the act must be complied with. And if the above requisites have not been observed, it is not perceived how the court could take jurisdiction of the case.

In the plea it is stated that accounts have been filed by the assignees at different times, and moneys distributed among the creditors. But how can this give jurisdiction? The court has no evidence of the extent and value of the trust, and no bond of the assignees faithfully to account. If these important steps have been taken, they should have been stated in the plea; as it must show, to be effectual, that the court had jurisdiction of the whole matter. The plea is defective in not setting out the above requirements.

But if the plea had been perfect in this respect, it would not follow that the complainant could not invoke the jurisdiction of the Circuit Court. He being a non-resident has his option

to bring his suit in that court, unless he has submitted, or is made a party, in some form, to the special jurisdiction of the Court of Common Pleas.

It appears from the bill, that the assignees have refused to allow the claim of the plaintiff, or any part of it. To establish this claim as against the assignees, the complainant has a right to sue in the Circuit Court, which was established chiefly for the benefit of non-residents. Not that the claim should thus be established by any novel principle of law or equity, but that his rights might be investigated free from any supposed local prejudice or unconstitutional legislation. On the most liberal construction favorable to the exercise of the special jurisdiction, the rights of the plaintiff, in this respect, could not, against his consent, be drawn into it.

It is difficult to define the character of this procedure under the Pennsylvania law. There being no court of chancery in that State, statutory provision was made for the execution of trusts. The statutes adopt some of the principles of chancery, but do not invest the court with the powers of a court of equity which are necessarily exercised in administering trusts.

It is not strictly a proceeding *in rem*. The proceeding is intended to adjust the rights of debtors and creditors of the bank, beyond the jurisdiction of the State of Pennsylvania. Citizens residing, perhaps, in a majority of the States of the Union, are debtors or creditors of the bank. It is difficult to perceive by what mode of procedure the State of Pennsylvania can obtain and exercise an exclusive jurisdiction over the rights of persons thus situated. From the plea, it does not appear that any notices have been given, or citations issued, as authorized by the statute. Nothing more seems to have been done by the assignees than to file their accounts, have them referred to auditors, and finally sanctioned by the court. Whether this procedure is evidence of a faithful discharge of the trust so far as the accounts have been so adjusted, it is not necessary to inquire. We suppose that it could not be contended, that fraud or collusion might not be shown to avoid the proceeding before any tribunal having jurisdiction.

No suit seems to be pending in the Common Pleas. The action of the assignees appears to be voluntary, for their own justification, and not in obedience to the order of the court. By the statute, any person interested may; on application to the court, obtain a citation to the assignees to appear and answer. But this is nothing more than the ordinary exercise of a chancery power to compel them to account. And it is only an exercise of jurisdiction over them from the time the bill is filed and a notice served, or the application for a citation is made

on due notice.  If no such proceeding is had, the assignees, it would appear, file their accounts or omit to do so at their pleasure.

This is not in the nature of a bankrupt or insolvent procedure.  Neither the person nor the property of the assignor is entitled to exemption, under the statute, from the claims of creditors.  But in such a proceeding, notice to the creditors and a schedule of debts, as well as assets, are required by law.

Under the laws of Pennsylvania a debtor may assign his property for the benefit of his creditors, giving a preference to some of them over others.  This may be done by the common law.  The assignment made by the late Bank of the United States specifies different classes of creditors, but none are excluded from the benefits of the assignment.

The assignees admit, in their plea, that they have vested a large amount of assets to await the determination of certain suits still pending.  Suppose they had reduced to possession the whole amount of the assets of the bank, and held them ready for distribution ; could it be doubted that the complainant would have a right to file his bill in the Circuit Court, not only to establish his claim against them, but also for a proportionate share of the assets.  The Circuit Court could not enjoin the Court of Common Pleas, nor revise its proceedings, as on a writ of error ; but it could act on the assignees, and enforce the rights of the plaintiff against them.  The debts due by the bank being ascertained, and the amount of its assets, after the payment of all costs, the equitable distribution would not be difficult.

Not doubting that the complainant may file his bill in the Circuit Court for the purposes stated, against the defendants, we deem it unnecessary at this time to consider questions which may arise in the exercise of the jurisdiction.  The questions certified by the Circuit Court are both answered in the negative.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Pennsylvania, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel.  On consideration whereof, it is the opinion of this court, 1st. That the facts stated in the amended plea to the amended bill filed by John Bacon, Alexander Symington, and Thomas Robins, do not deprive

the said Circuit Court of jurisdiction of this case; 2d. That the facts stated in the plea to the amended bill filed by the defendants James Robertson, Richard H. Bayard, James S. Newbold, Herman Cope, and Thomas S. Taylor, do not deprive the said Circuit Court of jurisdiction of this case;—and that this opinion renders it unnecessary for this court to answer the remainder of the questions certified. Whereupon it is now here ordered and adjudged by this court, that it be so certified to the said Circuit Court.