BARRON COUNTY, (NORTH WISCONSIN RY. CO. v.) See Case No. 10,347.

## Case No. 1,057.

In re BARROW. In re LOEB et al. In re WINTER.

[1 N. B. R. 481, (Quarto, 125;) [1] 1 Amer. Law T. Rep. Bankr. 63.]

District Court, D. Louisiana. April Term, 1868.

BANKRUPTCY—JURISDICTION—FEDERAL AND STATE COURTS—SALE BY ASSIGNEE.

1. The jurisdiction of the United States district courts sitting as courts of bankruptcy is superior [to] and exclusive [of the jurisdiction of state courts] in all matters arising under the bankrupt act.

[Cited in Re Vogel, Case No. 16,983; Re Vogel, Id. 16,982; Markson v. Haney, Id. 9,098; Re Mallory, Id. 8,991; Re Brinkman, Id. 1,884.]

2. The United States district court for Louisiana has judicial power to authorize the sale, by the assignees, of real estate surrendered by bankrupts, free and discharged of all debts secured by mortgage thereon.

[Cited in Clifton v. Foster, 103 Mass. 233; Markson v. Haney. Case No. 9,098; Giveen v. Smith, Id. 5,467; Re Brinkman, Id. 1,884; Sutherland v. Lake Superior S. C. R. & I. Co., Id. 13,643.]

[In bankruptcy. In the matter of R. H. Barrow; in the matter of Loeb, Simon & Co.; in the matter of W. D. Winter. Petition by assignees for orders to sell real property free of incumbrances. Granted.]

DURELL, District Judge. The assignees of the bankrupts have, in the above entitled cases, filed petitions praying for orders authorizing the sale of real estate surrendered by the bankrupts, free and discharged of all debts secured by mortgage thereon; thus transferring the security of the mortgage creditor and his right to priority of payment from the land to the proceeds of its sale. The judicial power of the court to issue orders in conformance with the prayers of the petitioners is called in question. The jurisdiction of a district court of the United States sitting as a court of bankruptcy, is superior and exclusive in all matters arising under the statute. The estate surrendered is placed in the custody of the court so sitting in bankruptcy, and the officer appointed to manage it is ac-

[1] [Reprinted from 1 N. B. R. 481, by permission.]

countable to the court appointing him, and to that court alone. No court of an independent state jurisdiction can withdraw the property surrendered, nor determine, in any degree, the manner of its disposition. These principles have been settled in cases which have declared the relations existing between federal and state jurisdictions. Taylor v. Carryl, 20 How. [61 U. S.] 583.

The court being possessed of jurisdiction over the bankrupt's estate, and entitled to its exclusive administration, this question arises: How far does the power of administration extend? Does it extend to a suspension of proceedings taken for the purpose of subjecting portions of the estate surrendered to a sale under state process? The answer to this question is to be found in the general powers conferred upon the court.

Until sale is made, the bankrupt is not divested of his interest in the property under seizure. The assignee, appointed before sale is made, acquires the bankrupt's interest, and he acquires it for the general benefit of the creditors. The interest of creditors in a suit wherein property is seized, is represented by the debtor, who has a standing in court and a power to intervene at any stage of the proceedings of the case. But by bankruptcy a new class of rights and interests is created, and each and every creditor has, through the assignee, a direct claim upon the estate. To permit a single creditor to follow his personal claim without reference to the common interest, might work great injustice. The debtor, by his bankruptcy, is made incompetent to act. The law strips him of his property by a summary decree, and assumes the administration of his effects. It is in the nature of a bankrupt act to deal potentially (for the good of a class) with private and personal interests, and to uphold a general and just policy.

The bankrupt act of 1867 [14 Stat. 517, c. 176] undertakes to establish a uniform system of bankruptcy. Without such uniformity the bankrupt could receive but a partial relief; for the insolvent laws of a state operate effectively only upon creditors residing within, and upon property being within the state of the insolvent's residence. Baldwin v. Hale, 1 Wall. [68 U. S.] 223. A bankrupt law, operating upon creditors wherever resident throughout the Union, must have a perfect control over all the property of the bankrupt in order to fulfil its purposes. A creditor residing without the state in which the bankrupt resides, is brought involuntarily into a court of the United States, sitting as a court of bankruptcy, and a decree of that court discharging the bankrupt, binds the creditor. It is due, then, to the creditor, that the court should collect all the assets, adjust and liquidate all the incumbrances, and dispose of and distribute all of the effects of the bankrupt. And such are the powers given to the district courts of the United States, under and by virtue of the bankrupt

act. In the case of Ex parte Christy, 3 How. [44 U. S.] 292, [321,] the supreme court says: "Prompt and ready action, without heavy charges or expenses, could be safely relied on when the whole jurisdiction was confined to a single court, in the collection of the assets; in the ascertainment and liquidation of the liens, and other specific claims thereon; in adjusting the various priorities and conflicting interests; in marshalling the different funds and assets; in directing the sales at such time and in such manner as should best subserve the interests of all concerned; in preventing, by injunction or otherwise, any particular creditor from obtaining an unjust and inequitable preference over the general creditors by an improper use of his rights and remedies in the state tribunals; and finally, in making a due distribution of the assets, and bringing to a close within a reasonable time, the whole proceedings in bankruptcy." The first section of the bankrupt act of 1867 is but a repetition of a portion of this extract from the opinion of the supreme court; and the whole of it is to be found in the act. The act says that the court has the entire direction of sales to be made and of accounts to be rendered; that it has full power and authority to compel obedience to all orders and decrees made by it in bankruptcy, by process, to the same extent that the circuit courts have in any suit pending in equity. Such being the origin of the law, the court must suppose that the expositions of the opinion upon which it is based have been recognized as correct.

The estate of the mortgagee, at common law, is a fee simple estate. A tender after the law day does not discharge a mortgage; a reconveyance is necessary. The mortgagee cannot be required to do anything in equity, other than submit to redemption. This right of redemption is, in equity, inherent in a mortgage. "Once a mortgage, always a mortgage." But no such qualities attach to, or are inherent in, a mortgage in Louisiana. Here the mortgagee is not entitled to possession; cannot claim profits until after seizure, and instead of foreclosure can only sell. After insolvency in Louisiana, the syndic sells, and all that the mortgagee can ask for is that the sale may be a sale for cash. The bankrupt does not, therefore, in Louisiana, impair any of those vested rights which in England and in America have a constitutional protection. It is not important in these cases to consider how far, in other states, vested rights are under the dominion of a bankrupt law; it is sufficient to know that in Louisiana a sale of the land is all that the mortgagee bargains for, and such sale is secured by the bankrupt act as fully as by the laws of the state. The bankrupt act places in the court a discretion to fix the time and place of sale; and precisely this discretion exists in the insolvent system of Louisiana. It has never been controverted as unconstitu-

tional, and if not unconstitutional, congress may confer it. The same power is conferred upon the bankrupt court of France, to be exerted after the concordat is settled among the creditors, and a syndic is appointed; and the same power is conferred upon the bankrupt court of England, to be exerted in all cases of liens except those that convey a right in the land itself—a jus in re. The people of the thirteen original states, when they created the present general government, gave to congress the power to establish uniform laws on the subject of bankruptcies throughout the United States; and when congress put in execution that power, all the state insolvent laws became necessarily silent, and the property of the bankrupt, even to the shadow of an interest in any estate whatsoever, was thereby subjected to the dominion of the courts of the United States.

Orders will, therefore, be made and issued in conformity with the prayers of the petitioners.