## LEHMAN v. ROSENGARTEN and another.

*(Circuit Court, E. D. Michigan. January 26, 1885.)*

1. REPLEVIN—PLEA OF POSSESSION UNDER ASSIGNMENT UNDER STATE LAW.
     It is not a good plea to an action of replevin in the federal court that the defendant holds possession of the property as assignee under a state law regulating general assignments for the benefit of creditors, and proceedings thereunder, and providing that under certain circumstances the courts of the state may enforce the trust, appoint a receiver, etc., and giving to such courts supervisory powers of all matters and disputes arising under such assignments, etc.

2. SAME—POSSESSION OF ASSIGNEE NOT POSSESSION OF COURT.
     The possession of such assignee is not the possession of the court.

On demurrer to a plea in abatement.

The action was replevin. Defendant Rosengarten pleaded that his co-defendant, Schlesinger, had made to him a general assignment for the benefit of creditors, under the provisions of the state act for the regulation of such assignments; that both he and Schlesinger had complied with all the provisions of the act with respect to the acknowledgment and filing of the assignment, the filing of the bond and inventory, etc.; and that from the delivery of said assignment "continuously to the time of the service of the writ of replevin in this cause, and at the time of said service, the said defendant was in possession of the property mentioned in said writ of replevin and declaration by virtue of the trust created by said assignment, and by virtue of the provision of said acts;" and he therefore averred that at the time of the service of said writ the property mentioned therein was in the custody and under the control of the circuit court for the county of Wayne, etc. Plaintiff demurred to this plea, and defendant joined in demurrer.

*C. E. Warner,* for plaintiff.

*John D. Conely,* for defendants.

BROWN, J. The issue tendered by the pleadings in this case raises the question whether a general assignee for the benefit of creditors, under the assignment law of this state, holds possession of the assigned property as an officer of the circuit court of the proper county, or simply as a trustee for the benefit of those interested in the property; in other words, whether the property while in his possession is in the custody of the law, within the purview of the cases which hold that property in the possession of an officer of one court cannot be replevied or seized by the officer of another court. *Covell v. Heyman,* 111 U. S. 176; S. C. 4 Sup. Ct. Rep. 355; *Freeman v. Howe,* 24 How. 450; *Krippendorf v. Hyde,* 110 U. S. 276; S. C. 4 Sup. Ct. Rep. 27. Doubtless the principle of these cases also extends to an assignee in bankruptcy who takes his title directly from the court, and whose possession has always been treated as the custody of the law. *In re Vogel,* 7 Blatchf. 18; *In re Barrow,* 1 N. B. R. 481.

To my mind it is equally clear that a state legislature may enact an insolvent law of the same general nature as the federal bankrupt laws, which would vest in the trustee a possession of the insolvent's property unassailable by the process of any other court, and thus accomplish all which is claimed by the defendant in this case. *Keys Manuf'g Co.* v. *Kimpel*, 22 FED. REP. 466. Whether the general assignment law of this state is so far an insolvent law as to effectuate this exemption depends upon the extent to which the assignee acts under the direct authority of the court. A careful examination of its provisions, it seems to me, relieves the question of all reasonable doubt. Section 1 declares that all common-law assignments for the benefit of creditors shall be void, unless the same shall be without preferences, of all the property of the assignor, and unless the assignment, or a duplicate thereof, an inventory of the property, a list of the creditors, and a bond by the assignee shall be filed in the office of the clerk of the circuit court of the county where the assignor resides. The second section requires the assignment to be acknowledged, and gives specific directions respecting the inventory, the list of the creditors, and the bond. The third declares that every such assignment shall confer upon such assignee the right to recover all property, etc., which might be reached or recovered by any of the creditors. Section 4 provides for notices to creditors, and for filing proofs of claims "in said clerk's office." Section 5 requires the assignee to file a report "in said clerk's office" within three months after receiving such trust, etc. Section 6 enacts that in case of fraud in the assignment, or in the execution of the trust, or of the failure or neglect of the assignee in his duties, any person interested therein may file his bill in the circuit court in chancery of the proper county, for the enforcement of said trust, which court may appoint a receiver, with power to examine parties or witnesses. Additional sections were added in 1881, providing for the contest of claims in the proper circuit court, and also prescribing (section 10) that no allowance shall be made to any assignee for his compensation, etc., except upon notice to creditors that he intends to make application for such allowance. The final section (11) confers upon the circuit court in chancery of the proper county supervisory powers of all matters and disputes arising under the assignment, and authority to make all proper orders for the management and disposition of the assigned property, the distribution of the assets and avails, and the recovery of all property claimed by third persons, etc.

It is insisted by the defendant here that his possession under this act is analogous to that of an assignee in bankruptcy, and that he is therefore entitled to the same protection. A moment's consideration, however, will show that an assignee under this law, and an assignee in bankruptcy, stand in very different relations to their respective courts. Before an assignee in bankruptcy could take possession of the assigned property, there must have been a petition filed in the

district court, an adjudication of bankruptcy, a reference to the register, who held in fact an auxiliary court, proof of claims before him, a meeting of creditors called by and presided over by him, a choice by a majority of their votes, and an assignment by the register to such assignee. His only title to the assigned property was thus taken from the court itself by operation of law, and not by act of the parties. From this moment until his final discharge he was under the constant supervision of the court. He was obliged to keep regular accounts of all moneys received and expended, and to report to the court at least once in three months. He was bound to deposit his moneys in a bank designated by the court, and the moneys so deposited could only be drawn upon his checks, countersigned by the judge or register. He could not submit controversies to arbitration, or settle such controversies by agreement, except under the direction of the court. No sale of property could be made except at public auction, and no dividend paid except by instruction of the court, which was also vested with the ordinary powers of a court of chancery in respect to the supervision of the proceedings and removal of the assignee.

Upon the other hand, an assignee, under the law of this state, may collect the assets and distribute the proceeds of the entire estate, without once applying to the court, except, perhaps, to fix his compensation in case of dispute as to the amount which should be allowed him. It is true that he is bound to file a copy of the assignment, his inventory, a list of creditors, and his bond in the office of the clerk of the circuit court; but that was designed merely as a convenient place of deposit in case any person interested in the estate should wish to examine them. Proofs of claims were also required to be filed in the same office. It is also true that jurisdiction was vested in the circuit court in chancery in certain contingencies to enforce the trust, to authorize the recovery of all property claimed by third persons, and to require new bonds or sureties, but there can be no doubt that most, if not all, of these powers existed without the statute, and that, if useful for any purpose, this section was inserted out of abundant caution, or was intended to designate the precise bounds of the jurisdiction of such court in this connection.

In 2 Story, Eq. § 1037, it is said that "the trusts arising under general assignments for the benefit of creditors, are, in a peculiar sense, the objects of equity jurisdiction. For, although at law there may, under some circumstances, be a remedy for the creditors to enforce the trusts, that remedy must be very inadequate as a measure of full relief. On the other hand, courts of equity, by their power of enforcing a discovery and account from the trustees, and of making all the creditors, as well as the debtor, parties to the suit, can administer entire justice, and distribute the whole funds in their proper order among all the claimants, upon the application of any of them, either on his own behalf or on behalf of himself and all the other creditors." See, also, *Ledyard's Appeal*, 51 Mich. 623; S. C. 17 N. W. Rep. 208.

Certainly this section, conferring these powers upon the state court, would not oust the jurisdiction of this court to entertain a proper bill for the same purpose, although it will be conceded that if a receiver were appointed by either court, his possession of the assigned property would be exclusive. *Chewett* v. *Moran,* 17 FED. REP. 820, and cases cited. But it would be a strange doctrine to hold that an assignee chosen by an insolvent debtor could be thrust upon and made an officer of a court of justice without its authority or recognition. The position here taken is fully sustained by the following cases: *Shelby* v. *Bacon,* 10 How. 56; *Griswold* v. *Central Vermont R. Co.* 9 FED. REP. 797; *Adler* v. *Ecker,* 2 FED. REP. 126; *Lapp* v. *Van Norman,* 19 FED. REP. 406; *Mississippi Mills Co.* v. *Ranlett,* 19 FED. REP. 191.

The demurrer to the plea in abatement is therefore sustained.