SPINNING AND BROWN v. THE OHIO LIFE INSURANCE AND TRUST
CO., AND CHARLES STETSON ET AL., Assignees, etc.

(No. 9,776.)

1. Jurisdiction of a cause attaches upon the filing a petition and issuing of
the summons.
2. The 78th section of the code refers solely to questions of title in the
specific property in controversy, viz: "When the summons has been
served, or publication made, the action is pending so as to charge third
persons with notice of its pendency, and while pending, no interest can
be acquired by third persons in the subject matter thereof."
3. An action once commenced is not abated by another action being com-
menced between the same parties, in relation to the same subject, in the
same or any other court of concurrent jurisdiction.
4. Courts of this State have authority to punish, in a summary manner,
any disobedience or resistance of any lawful writ, process, rule, decree
or command which may have been made and entered upon their jour-
nal.
5. A receiver is an officer of the court and his possession is that of the
court. Any attempt to interfere with or disturb the possession of the
officer, directly questions the power of the court to appoint him, as well
as the right of the court to the custody of the property; and such act
subjects the disturber to attachment and punishment for contempt.
6. A suit is never permitted against a receiver where the judgment would
affect the custody of the property sequestrated; nor can a creditor litigate
his claim by action against the receiver; every such question can be
determined by the court, through an intervention, in the pending liti-
gation.
7. An injunction operates in personam only; it does not work a change of
possession or entitle a party to claim it: If two courts have concurrent
jurisdiction, the one which first obtains possession of the subject must
adjudicate, and neither party can be forced into another jurisdiction.

SPECIAL TERM.—On motion to dismiss for want of juris-
diction. An action brought by Charles E. Spinning and
Charles Brown, partners, as Spinning & Brown, judgment
creditors of the Ohio Life Insurance and Trust Company,
asking the appointment of a receiver of the assets and
effects of said company.

The petition sets forth that the Ohio Life Insurance and
Trust Company is a corporation created by act of the

general assembly of the State of Ohio, with powers of a banking, trust and life insurance company; that under its act of incorporation the company had transacted business for many years, having its principal office in the city of Cincinnati and an agency in the city of New York; that in the month of August, A. D. 1857, it was suddenly discovered that the company was and had been, for some time previous, greatly embarrassed for want of means to carry on its business, by reason of heavy losses, principally incurred at the New York agency, and by reason of gross mismanagement had become and was utterly and entirely insolvent; that thereupon the company closed its doors; that all its assets in New York, to a very large amount, were seized under process of foreign attachment, and a very large number of suits were commenced against it in Ohio; that before and at the time of the failure of said company, the defendants, Charles Stetson, Samuel Fosdick, Abraham M. Taylor, John C. Wright, Clement Dietrich, Samuel J. Broadwell and George Crawford, assignees, were members of the board of trustees, upon whom devolved, by charter, the government of this corporation; and that after said failure, for about a month, they, with their co-trustees, continued to manage the affairs of said company, and without making a thorough investigation of the condition of the affairs thereof, or waiting for the report of a committee, discharged large debts of the company in full, by allowing them to be used at par, in payment of the claims of said company against good and responsible men, and by allowing solvent debtors of the company to purchase at a discount checks of depositors, and use the same at par in payment of their debts; that, in this way, they disposed of by far the greater portion of the valuable assets of the company, and being all, or nearly all, debtors of said company, they paid their own debts in the same way; that they conveyed the banking house and other real estate of the company to the Merchants' Bank of Cleveland, in payment in full of a large indebtedness; that they made no provision for the

security of holders of life insurance policies, some of whom had been paying premiums for twenty-five years; that though they were, by rule of the district court of the United States for the southern district of Ohio, and, in pursuance of law, constituted the registry of that court, and as such had on deposit a large sum of money, they made no provision therefor, nor for the large sums which had been deposited with them by order of this and other courts, and by guardians, administrators, executors and master commissioners; that they paid in full a debt due to the county of Hamilton, for which the said trustees, or some of them, were responsible as indorsers for said company; and thus having disposed of the larger portion of the means of said company, the trustees, on the 22d of September, 1857, in the name of said company, made an assignment of the remaining assets and property of said company to the defendants, Stetson, Fosdick, Taylor, Crawford, Broadwell, Wright and Dietrich in trust, for the equal benefit of the creditors, to be reduced to money and divided proportionately among said creditors; and the plaintiffs state that thereupon said defendants accepted said trust, and commenced the discharge thereof, and have ever since been professing to be engaged therein; that more than a year has elapsed, and, as yet, no dividend has been declared to the creditors—no statement or report made to the creditors of the condition of the company until within a few weeks, and that said report was prepared more with reference to a justification of the acts of the defendants as trustees, than for the purpose of informing the creditors as to the condition of the company.

The petition proceeds to state the grounds on which the assigment was improper—the parties being trustees, some of them, from advanced age, wanting in the energy and activity necessary for the discharge of a complicated trust, and others engaged in private occupations of an absorbing character. It charged them with gross inefficiency, and alleges that the property is passing away without benefit to any one, and that the entangled character of the affairs of

the company requires vigorous and prompt action, and that said trust should be executed under the direction of a competent court, to whom resort can be had in case of difficulty.

The plaintiffs, (who are judgment creditors,) allege that there are many creditors in this and in other States and in Europe, for whose benefit, as well as their own, they bring this suit.

Wherefore they ask for the appointment of a receiver, to take charge of the assets and property of said company, and that he may, under direction of this court, take charge of the assets, and proceed with the execution of said trust.

The petition was filed on October 14th, A. D. 1858, and on the same day, summons was issued, returnable on the 25th of that month, and was served on all the defendants by the sheriff on the 21st. Notice of an application, to be made on the 18th of October, for a receiver in the cause was also served in writing, at the office of the Life Insurance & Trust Co., on Samuel J. Broadwell, chairman of the assignees, on the day the petition was filed. On October 16th, A. D. 1858, Bell & Grant, a firm, resident and doing business in London, Great Britain, filed their certain bill in chancery, in the United States circuit court, for the southern district of Ohio, against the same defendants, and praying for the same remedy sought in the present action. Process of subpena was forthwith issued in that cause, and service was made by the marshal, on the same day, on the principal defendant, and on four of the assignees, Stetson, Taylor, Wright, and Broadwell. On the 18th, Fosdick was served, and on the 19th, Dietrich was served with process. Notice of an application to be made on the 18th, for the appointment of a receiver, by the circuit court, was also served on the 16th, on some of the defendants, and on others on the morning of the 18th. The circuit court, on Monday, October 18th, made an order in the case, to-wit: " On motion of plaintiffs, the court do order that an injunction issue to the said trustees and said assignees, ordering and directing them to stay further proceedings with respect to the assets of said

corporation, and to hold the same subject to the further order of this court; and the application for receiver is continued until next Saturday."

A copy of this order of injunction was served by the marshal on Fosdick, one of the assignees, at twenty minutes past eleven o'clock, A. M. of October 18th.

On Monday, the 18th, the motion for a receiver was submitted to the superior court of Cincinnati, and Nathaniel Wright, one of the assignees, appeared in court on behalf of himself and his associates, and represented that the defendants entered their appearance and submitted the whole matter to the consideration of the court, the assignees simply desiring an opportunity to controvert such allegations of the petition as impeached the integrity of the assignees in their action. Thereupon, the court made an order, to-wit:

"And, now the plaintiffs come and move the court to appoint a receiver in this cause, and having given to the defendants written notice that this motion would be made, and the defendants interposing no objection to the making the appointment, but reserving the right to controvert the allegations in the petition, which impeach their integrity, the court, for the purpose of preserving the property in the hands of the defendants, now appoint the sheriff of Hamilton county receiver, and direct him to take charge of said property, and hold the same subject to the order of this court, until the court shall be advised whom to appoint."

Thereupon, the sheriff, on the 18th of October, about half past eleven, A. M., in pursuance of his appointment as receiver, took possession of the property and assets of the company, then in the hands of the assignees.

Frederick H. Stageman was, by leave of the court, made a party to the proceeding, by reason of his interest as a judgment creditor of the Trust Co.; and, thereupon, he files his answer, setting up the facts relating to the proceedings of the United States circuit court in the matter of Bell & Grant, and asks the court, by reason of such proceedings,

to dismiss the proceedings in this court as not within the jurisdiction of the court.

*Mills & Hoadly*, for plaintiffs, submitted the following points:

1. The commencement of a suit is the filing of the petition and issuing of process. Code, sec. 55. This is so between the parties. But as to conflicting titles acquired by third parties, there is no *lis pendens* until service of process is complete. The issuing of process commences the suit between the parties and those they represent, for every material purpose. For example, so as to stop the running of the statute of limitations; and the service of process constitutes a *lis pendens* as to the private rights of third parties, only because public policy requires that protection should be given to those dealing in ignorance with persons not served, and because, after service, the like policy charges all with notice, to prevent multiplication of suits and protracted litigation. But the rule of *lis pendens* only applies to conflicting "titles" of "third persons," not to parties and those they represent.

2. But in cases of conflict of jurisdiction between courts, like the one at bar, no private right is involved, no conflicting title has been acquired. The party loses no right: he is only remitted for his remedy to another forum.

What is jurisdiction? It is "the power to hear and determine." As soon as a court in a cause acquires "the power to hear and determine" *any* controversy, or *any* part of *the* controversy, it has acquired jurisdiction of the cause. *Sheldon's lessee* v. *Newton*, 3 Ohio St. 494; *Grignon's lessee* v. *Astor*, 2 How. 338. In ordinary civil actions, *in personam*, jurisdiction is acquired by the service of process. Until such service, there is no "power to hear and determine" any question in the cause.

In actions purely *in rem*, jurisdiction is acquired by seiz-

ure.   Thus, in admiralty, seizure gives jurisdiction, though the monition be not served, or notice given till afterward.

There is a class of cases partly *in personam,* partly *in rem,* as attachment cases.   There jurisdiction is acquired by seizure.   *Paine's lessee* v. *Mooreland,* 15 Ohio, 435.   And in such a case, after seizure, and before service, no subsequent attachment, with a prior service, can gain priority.

There remains still another class of cases which have some of the features of actions *in rem* and *in personam.* These are actions for injunctions and actions for the appointment of receivers.

In these cases jurisdiction is acquired by the filing of the bill or petition; for, as soon as that is done, before process issued or served, the court can "hear and determine" an application for provisional injunction or temporary receiver. No notice, even, is necessary to give jurisdiction.   The court may act without it.

Having acquired jurisdiction by the filing of the petition, for these purposes, a court will not let go, even if subsequently another petition is filed and process first served.

For the issue is "*jurisdictio vel non,*" and the averment of "no jurisdiction" is negatived when it is shown that the court has ever had any power to act in the cause; and having upon petition filed, even without notice, acquired the power to act, at least, provisionally in such cases, jurisdiction is shown.   It matters not when the jurisdiction is exercised, the question is, when did it attach.   Otherwise, even after a receiver appointed, and possession taken by him, or an injunction granted, the action of the court may be ousted by a subsequent suit in which the summons happens to be served first.   So, too, if such be not the rule, a receiver appointed before service is a trespasser.   This absurd result follows upon forgetting that the question is not as to *lis pendens,* or as to the statute of limitations, but of jurisdiction.   When jurisdiction is once acquired in any case, it relates to the commencement of the suit.   10 Howard, 65, *Shelby* v. *Bacon;* 9 Paige, 512, *Hayden* v. *Bucklin;* 14 Howard, 66, 368.

3. *Lis pendens* is a substitute for notice. Judge McLean calls it " constructive notice." 14 Peters, 333.

It does not in any way affect the question of jurisdiction, whether there is a *lis pendens* or not.

Actual notice being shown, the necessity for resorting to constructive notice is dispensed with. If Bell and Grant, before they filed their bill, knew of the filing of this petition by Spinning and Brown, they could not acquire any rights by filing their bill. For the rule is to protect the ignorant and unwary, and not the notified. 16 Ves., Jr. 419; and notice to the trustees is notice to them.

4. But in this case there is not even the objection of " *lis pendens.*" For there is no new " title" acquired, nor are there any "third persons" concerned. For the trustees represent all the creditors, and this petition is filed on behalf of all the creditors, and it must follow that Bell and Grant have been parties here from the commencement of the suit. 4 Leigh, 5, *Buck* v. *Pennybacker* If this is not so, then Spinning and Brown are not parties to the cause in the federal court, and the plea of another action pending must fail.

5. Nor can the controversies between the parties to this cause be determined by the federal courts, because they are all citizens and residents of Ohio. There is, and can be, under the constitution, no jurisdiction in the federal court of the question vexed between citizens of Ohio and the assignees.

6. In cases of joint action, as where trusts are involved, there is no *lis pendens* until service is complete on all the defendants. Any third person may safely, before notice and before process served, deal with a defendant who is not served. 17 Howard, 424, *Herndon* v. *Ridgway.*

7. In the case at bar the bill was filed on Thursday, October 14th, and notice of the proposed application for a receiver given to the defendants; on Friday they procured a copy of the bill; on Saturday they were served with subpenas as witnesses in the cause; on Monday they appeared in open court in the cause, and in person and by counsel

assented to the entry which was made. As to the date of service of process, witnesses must be examined. The sheriff obtained possession before service upon any of the assignees of the notice of injunction; and, certainly, before service upon more than one, if there is doubt so far. So that jurisdiction has been closely followed up, no negligence is shown.

8. The injunction of the federal court does not operate. One court of concurrent jurisdiction can not enjoin the action of another. *Merrill* v. *Lake*, 16 Ohio, 403.

9. The possession of the sheriff is that of the court. If it is objected that he has given no bond as receiver, the answer is that it was waived, as this court has often decided, it can be waived. This objection, as Judge Gholson properly remarked on Monday, does not go to the jurisdiction, but can only be used as the predicate for a motion to require a bond.

10. Public policy will not allow a court fo date the commencement of a suit later than the issuing of process. For the State undertakes to make service, and she can not give preferences by the date of her action. In States like Connecticut and New York, (under their code), where a contrary rule prevails, the service is not made by the State, but by the parties. So it was in Ohio in ejectment cases formerly; but now all suits begin the moment the action of the State is involved.

*E. A. Thompson,* for Frederick H. Stageman, a judgment creditor argued in reply:

1. It is claimed that the filing of the petition, and issuing of the summons, is a "suit in court," and that the 55th section of the code sustains this position. That section merely points out the manner of commencing a suit—the *modus operandi* of getting into court—the mere machinery or mechanical labor. A similar provision is contained in the statutes of nearly every State, and Ohio had a similar one before the code; yet, at that time, to constitute a suit in court, *it* was

necessary, not only to have the bill filed and process issued, but it must also be *served.* 5 Ohio, 463; 4 Conn. 149; 22 Ala. 145; 15 Ala. 232; 26 Miss. 391. A defendant no served is *not a party to the suit.*

2. But if the filing of the petition and issuing of the summons is in all cases the commencement of the action, as is claimed under the 55th section of the code, what could have been the object of the 20th section? That section provides that an action shall be deemed commenced, so as to prevent the statute of limitations from being pleaded, at the *date* of the summons; but if *all* actions are deemed commenced upon filing the petition and issuing the summons as is claimed, to be the construction of the 55th section, there surely is no need of section 20. The fact that the legislature deemed it necessary to incorporate this section in the code, proves that my construction of section 55 is correct—the exception proves the rule. The legislature plainly intended that process should be served before a suit could be pending. Sec. 78.

3. Suppose the assignees or trustees desire to prevent a prosecution in this case, which is claimed to be the case, all they have to do is to procure some one to file a petition and issue a writ against them—no service need be had—the suit being entirely under their control, can remain any length of time with process not served, and yet, while this suit remains, no other creditor can institute proceedings.

GHOLSON, J. In this case an objection has been made to the jurisdiction of the court, upon the ground that another court, the circuit court of the United States, has obtained prior jurisdiction of the subject-matter in controversy. "When different courts have concurrent jurisdiction, the one before whom proceedings may be first had, and whose jurisdiction first attaches, must, necessarily, have authority paramount to the other courts; or, rather, the action first commenced shall not be abated by an action commenced between the same parties, in relation to the

same subject, in the same or any other court." *Stearns* v. *Stearns*, 16 Mass. 167–171. It has been said by our supreme court that "after one court of chancery has obtained rightful jurisdiction over a subject, another court of chancery, of only equal authority, should not exert jurisdiction over the same matter; but whenever the fact is shown, by competent evidence, should dismiss the bill." *Pugh* v. *Brown*, 19 Ohio, 202–211.

The test of the jurisdiction of a court has been said to be the right to begin the inquiry. When a court has jurisdiction of the subject-matter and of the parties, the bringing a suit or action in that court must be regarded as the beginning of the inquiry into the matter in controversy. From that time the jurisdiction of the court attaches. In what manner an action shall be commenced, must depend upon the law regulating the practice and proceedings of the particular court.

The practice and proceedings in the courts of Ohio are regulated by a code of civil procedure, and it would certainly be strange if that code had omitted to provide for a matter so important as the commencement of an action. It contains this provision : " A civil action must be commenced by filing in the office of the clerk of the proper court, a petition, and causing a summons to be issued thereon." Sec. 55. Certainly, nothing less will suffice, and had anything more been required, it is reasonable to suppose it would have been expressed. On the contrary, we are told by the code commissioners in their notes that " Hereafter there will be but one mode of commencing all civil actions: by petition and summons." It is true a difference is made in two specified instances, one where there is question of a bar by limitation of time, and one where the title of a third person may be affected by notice of the pendency of an action. The making these exceptions strongly tends to show that for other and ordinary purposes the filing a petition and causing a summons to issue thereon, is the commencement of an action in the courts of this State.

There is strong negative evidence that the issuing, and not the service, of a summons was intended by the framers of the code to be the commencement of an action under our system of practice. The historical origin of laws is always a proper matter to be regarded in any question of interpretation or construction. The connection between the code of New York and the code of Ohio, and that many portions of the former were borrowed in framing the latter, is well known. The section of the New York code, which precisely corresponds in position with the 55th section of our code, both beginning the title "Manner of Commencing Civil Actions," is as follows: Sec. 127, "civil actions in the courts of record of this State shall be commenced by the service of a summons." It is difficult to believe that this leading and important section of the New York code escaped the attention of those who framed our code; and its prominent position in that code strengthens the conviction that, had it been intended to adopt, as law in this State, any such provision, it would have been expressed in direct terms.

We have also the right to suppose that our codifiers and legislators were aware of the previous state of the law in New York, and that such a requisite for the commencement of action, so as to fix the time when the jurisdiction of a court attached, and the action was pending, had been introduced into that State by express legislation. To show this, a reference was only necessary to two authorities. In the case of *Carpenter* v. *Butterfield*, 3 Johns. Cas. 145, where the point arose upon the question of allowing a set-off, it was held that "the issuing of the writ in a cause is, as to every *material purpose whatever*, the commencement of the action;" and in the case of *Hayden* v. *Bucklin*, 9 Paige, 512, it was said, in substance, that "a suit in equity, as against the defendant, was considered as commenced from the teste of the subpena, as in case of suits at law commenced by original writs."

We are also bound to suppose that our legislators were acquainted with the previous law on this subject, both in the

country from which we derive our common law and in this country. A very limited acquaintance with that law would show the infinite importance of giving parties clear and precise information upon such a subject; and, particularly, so important a step as the actual service of process, if it had been required, to give the court jurisdiction of the subject-matter, and the plaintiff a standing in court, from which he might safely proceed, should have been made a matter of express direction.

That the emanation of process—the date or *teste* of the writ—has been regarded in England as the commencement of an action, is clearly shown by all the works on practice and pleadings. The writ is said by Blackstone to be " the beginning or foundation of the suit." 3 Blackstone, 272. In the United States it has been the general rule, in those States whose practice on the subject has been in analogy with that of England, to regard the issuing or suing out the writ as the commencement of action. This is clearly shown in the two cases before cited and will appear from others, a collection of some of which may be found in a note to the first case, and also in 1 Chitty on Pleadings, 260, note 4, ed. 1851. The only exception appears to be in the State of Connecticut, founded upon an early case, decided without any reason being assigned (*Clark* v. *Helms*, 1 Root, 486,) and afterward followed as a precedent, which had settled the practice in the State without reference to the practice in England or other States. *Jencks* v. *Phelps*, 4 Conn. 149.

I have preferred to examine the question, when an action is commenced, as one of construction; for I am not willing to admit that its determination has been omitted in our code. Considered in this view, I have no hesitation in coming to the conclusion that the filing a petition and causing a summons to issue, is for all purposes as to which a contrary intention is not expressed, the commencement of an action.

The action, in this case, was commenced in that manner, on the 14th of October, 1858. It is not claimed that any step whatever was taken in the circuit court of the United

States, previous to the 16th of the same month. Does the action of the circuit court of the United States, on that day, or afterward, come within any of the exceptions? If so, it must be pointed out and clearly shown. It has only been claimed as to the exception in section 78 of our code, which provides that " when the summons has been served, or publication made, the action is pending so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof."

If there be before me any question of conflict of jurisdiction, it can only proceed from circumstances which may be explained in a few words. The Ohio Life Insurance and Trust Company, an insolvent corporation, which has made an assignment in trust for its creditors, had certain assets, which have been in the hands of the assignees, and upon which assets the creditors of the company have a claim for the payment of their respective demands. A collection and distribution may be made by the assignees appointed by the parties, or by a receiver or a substituted trustee or assignee, appointed by a court of competent jurisdiction. Under the laws of Ohio, there being numerous creditors of the Trust Company, any one creditor may sue in behalf of all, and in a suit so brought, the court would have jurisdiction to administer the trust by causing the assets to be realized, and the claims of the creditors to be liquidated, so far as the fund would permit. Now, assuming that the circuit court of the United States would have a like jurisdiction concurrent with the State courts, and that a foreign creditor might elect to sue in that court, he could only do so in the same way, that is by suing on behalf or for the benefit of the other creditors, so as to give them their proper share of the assets. It being in the power, then, of either a domestic creditor, or a foreign creditor, to bring the subject-matter into court, to be administered for the benefit of all creditors, the only question seems to be whether this power to bring an action comes within the meaning of the section of the

code. The very statement of the proposition demonstrates that it does not.

The exception only applies in favor of third persons, and upon the point of notice. Third persons are not to be regarded as having notice of the pendency of a suit, so as to prevent their acquiring an interest in the subject-matter, as against the plaintiff's title, until the summons has been served, or publication made. The exception is obviously limited to the cases in which the plaintiff is asserting a title to some specific property, with which title that of third persons comes in conflict. The exception can have no possible application with the case of a conflict of jurisdiction, but is clearly intended to apply to cases of a conflict of title. There are here no third persons in the sense of that section. There can be no question of notice, or of the effect of notice. There is no dispute as to title. The plaintiffs in this case, and the plaintiffs in the case before the circuit court in reference to any question of title, stand upon the same footing. No one of the creditors, whether suing in that court or in this, can have any preference which the pendency of an action can affect. In other words, the mere right to bring a suit in behalf of other creditors, is not an interest in the subject-matter of another suit of a like kind, and certainly not an interest acquired with reference to the pendency of such a suit; and yet it would appear that only upon a ground so unfounded, could a claim, that the exception of the 78th section applies to this case, be sustained.

I feel no doubt, therefore, upon the general ground of the construction of our code, that this action for the purpose of giving the court jurisdiction, was commenced on the 14th of October, 1858; but there are one or two other considerations to which it is proper I should briefly advert.

I do not wish to be understood as claiming that jurisdiction to decide a case and bind the rights and interests of parties, exists until they have had opportunity of being heard, and for that purpose have been served with process.

There is a manifest distinction between the vesting of power and its exercise. The time a power is vested and the time a power is exercised may be distinguished. The time at which a power to act upon a particular subject-matter began, may be fixed at one period—the time when there is an exercise of the power, at another and subsequent period. What may be required for the one purpose, and to the exclusion of any other authority, may not be sufficient for the other.

There are certain steps which are taken by courts, and which are regarded as an exercise of power and jurisdiction, which are not a final decision upon the rights of parties, and have never, under any system, been supposed to require a regular service of process in the case. That our code does not require a service of process to authorize the granting an injunction or the appointment of a receiver has never been questioned. It is clearly shown by the terms of the code. When does the power of a court, effectually to exercise such a power, begin? When is the power so vested that any action of the court can not be defeated by the action of another tribunal, or, rather, by parties who may choose to use its process for that purpose? Is a judge who is proceeding upon a petition filed to determine whether he will grant an injunction or appoint a receiver, to stop short, and suspend the exercise of his power, upon being informed that another action has been brought which affects the same subject-matter, and service of process made during the time he has had the case under consideration?. Is the jurisdiction of the judge to depend upon the haste with which he may hear the application, and render his decision?

It appears in this case that, on the 14th of October, 1858, the petition was filed and the summons issued. On the same day, with a view of invoking the power of this court to appoint a receiver, notice in the ordinary mode of an application to be made for that purpose, on Monday, the 18th of October, the regular motion day of the court, was served on the parties. A copy of the petition was obtained by the

defendants on the next day, and counsel authorized to appear. On Monday, the motion is regularly called, and the plaintiffs and defendants, being represented in court, is argued and decided, and an order made appointing a receiver. In the meantime, on Saturday, the 16th of October, other parties having an interest in the same matter, and desiring the appointment of a receiver, to take charge of the same property, bring a suit in the circuit court of the United States, by issuing process and obtaining a service on some of the defendants during that day, and give a notice of an intention to apply for an injunction and receiver, on Monday, the 18th of October. On that day the circuit court of the United States, or, rather, the judges of that court, grant an injunction restraining the defendants from any disposition of the property, but do not appoint a receiver, which order of the judges, in point of time, to the extent, perhaps, of thirty minutes, preceded the order in this court.

Upon this statement of the position of the cases, I am not willing to admit that, independent of the question already considered as to the attaching of jurisdiction by commencing an action according to the 55th section of our code, it was competent either for the parties, either by haste in obtaining service of process in the case in the United States court, or for that court, by its decision of the motion for an injunction, to interfere with or prevent the exercise of the power of this court. I feel bound to regard the power of this court to proceed with a motion brought before it, as not dependent on the state of the case at the time the decision is rendered.

The true test on the subject is the beginning of the inquiry, not its termination. Nor can I admit that parties who are proceeding in the ordinary and regular mode, after a petition has been filed and a summons issued, to obtain the action of the court upon a motion for the appointment of a receiver; are to be defeated in their object by the acts of other persons, subsequently taken in another tribunal. The only mode in which such acts could possibly be made

effectual, would be by an actual possession of the subject-matter. There is certainly no principle of comity which requires the parties and the court first beginning the inquiry in the ordinary mode to give way. An inquiry thus commenced in this court, can not, in my humble judgment, be stayed by any proceeding in the circuit court of the United States. Certainly, an injunction, which only affects the parties personally, can not have such an effect. The courts of the United States can not issue "an injunction to stay proceedings in any court of a State." *Taylor* v. *Carryl*, 20 How. 583, 597.

It is only upon the principle, with a statement of which I began, that it would be the duty of this court to stay its proceeding in this case. We must be satisfied that an action was first commenced, that jurisdiction first attached in the circuit court of the United States. We have the right to know and feel competent to decide, when an action was commenced in this court, so as to give it jurisdiction. It is a matter, we think, which must be governed by the laws of Ohio. Upon a construction of the law, we think the jurisdiction of this court attached on the 14th of October, 1858, and we are freed from any necessity of deciding when and how the circuit court of the United States obtained jurisdiction, as none is claimed before that day.

In conclusion, using the language of another upon a similar occasion, while the maxim, that he is a good judge who enlarges the jurisdiction of his court, is one to which it is not safe to subscribe, yet it may be said, that it is "the duty of all courts to guard against any encroachments upon their rights." *Hartshorne* v. *Sleght*, 3 Johns. 561. And in the language of the supreme court of the United States, *Hyde* v. *Stone*, 20 Howard, 175, it may be added, the courts of Ohio, no less than the courts of the United States, "are bound to proceed to judgment in every case to which their jurisdiction extends. They can not abdicate their authority or duty in any case in favor of another jurisdiction."

The objection taken to the jurisdiction of the court will be overruled.

## IN MATTER OF CONTEMPT.

SPECIAL TERM.—On motion for rule to show cause etc. against James P. Kilbreth, receiver, appointed by the United States circuit court and Nathaniel C. McLean, his attorney.

At the November term, A. D. 1858, the court made an order, to-wit:

"The sheriff of Hamilton county, Richard Mathers, Esq., who has heretofore been appointed by this court, receiver of the assets and property of the Ohio Life Insurance and Trust Company, aforesaid, and has now the possession and custody thereof, under his appointment, now comes into court and makes his report in writing, by which it appears that, on Saturday, October 30th, last, James P. Kilbreth, claiming to have been appointed receiver of said company, under the authority of the circuit court of the United States, in the 7th circuit and southern district of Ohio, demanded of said Mathers the custody and control of said assets and property, which he said Mathers then and there refused to deliver to him; and afterward, to-wit, on the first day of November, inst., the said Kilbreth, through the instrumentality and by the assistance of Nathaniel C. McLean, well knowing of the appointment of said Mathers by this court, and his right to act as receiver in this cause, have caused to be issued from said circuit court of the United States aforesaid, and served upon said Mathers, a rule to show cause why he should not be attached for a contempt of said court, for not delivering up said assets and property aforesaid to said Kilbreth; all which is a direct interference with, and an attempt to control the conduct of an officer of this court.   It is now here ordered that a rule to show cause

issue to said James P. Kilbreth and Nathaniel C. McLean, requiring them to appear before this court, sitting in special term, on Saturday, the sixth day of November, inst., at ten o'clock, A. M., and show cause why they should not severally be attached for a contempt for interfering with said Mathers in the discharge of his duties as receiver, aforesaid."

And the court made a further order, to-wit:

" The court orders that the charges against said defendants, upon which said rule is predicated, be stated in writing, and that W. B. Caldwell, Esq., and George Hoadly, Esq., counselors of this court, be appointed to prepare the said charges, and when the same are prepared, that a copy be forwarded to said defendants."

Thereupon the following charges and specifications were prepared and filed, to-wit:

### CHARGES AND SPECIFICATIONS AGAINST N. C. M'LEAN.

Nathaniel C. McLean, Esq., is charged with having committed contempts of this court, as follows:

*Charge* 1.—By misbehavior as an officer of this court.

*Specification*—In that, being an attorney of this court, and well knowing that Richard Mathers was a receiver of this court, appointed in this cause, and as such, by order of this court, had taken actual possession of certain assets and property lately owned by the Ohio Life Insurance and Trust Company, and that the same were, on the 30th day of October, 1858, in his custody as such receiver, and that, in discharge of his duty as such receiver, said Mathers had on that day refused to deliver the same to one James P. Kilbreth, who then made demand of the possession thereof from him, said Kilbreth claiming to have been before then appointed a receiver of the same by the circuit court of the United States, for the seventh circuit and southern district of Ohio, in the cause of *James C. C. Bell et al.* v. *The Ohio Life Ins. and Trust Co. et al.*, in said court, pending, he said McLean well knowing that said Mathers had been duly appointed as receiver aforesaid, and was then

acting as such, did, on the first day of November, 1858, move the said circuit court that a rule issue in said cause against said Mathers, to show cause why he should not be attached for contempt, because of such refusal to deliver said assets and property to said Kilbreth, and on the second day of November, 1858, did procure such rule to issue from said circuit court, and is now prosecuting said Mathers for a contempt of said circuit court, in so refusing to deliver said assets and property to said Kilbreth.

*Charge 2.*—By resistance to the orders of this court in this cause.

*Specification.*—In that, well knowing that Richard Mathers had been appointed in this cause receiver of certain assets and property, lately owned by the Ohio Life Insurance and Trust Company, and that an order had been entered in this cause, directing him to take charge of the same, and hold them subject to the order of this court, and that, in obedience to the said order, he, said Mathers, had taken possession of said assets and property, and was then in peaceable possession thereof, he, said McLean, did, in disregard of and resistance to such order, and for the purpose of destroying its effect, and preventing said Mathers from holding the same in obedience to said order, in a certain cause pending in the circuit court of the United States, for the seventh circuit and southern district of Ohio, wherein James C. C. Bell and others were complainants, and the Ohio Life Insurance and Trust Company and others were defendants, one James P. Kilbreth, claiming to have been appointed a receiver of the same in said cause, and having demanded of said Mathers that he deliver up possession thereof to said Kilbreth, and said Mathers having refused, did move said circuit court, on November 1, 1858, that a rule issue against said Mathers that he show cause why he should not be attached for contempt in refusing to deliver the possession of the same to said Kilbreth; and, on November 2d, 1858, did procure the issuing and service of said rule, and is now

prosecuting said Mathers in said circuit court, as for a contempt of that court in such refusal.

### CHARGE AND SPECIFICATIONS AGAINST J. P. KILBRETH.

James P. Kilbreth is charged with a contempt of this court, as follows, to-wit:

*Charge.*—Resistance to the orders of this court in this cause.

*Specification.*—In that, well knowing that Richard Mathers had been appointed by this court a receiver of certain assets and property lately owned by the Ohio Life Insurance and Trust Company, in this cause, and that an order had been entered directing him to hold the same, subject to the order of this court, and that, as such receiver, he was in possession of said assets and property, under said order, he did, on the 30th day of October, 1858, for the purpose of resisting the carrying out of said order and destroying its effect, demand possession of the said assets and property from said Mathers, and did then endeavor to procure said Mathers, in disregard of said order, to deliver the same to him.

### ANSWER OF N. C. M'LEAN.

N. C. M'Lean respectfully represents, in the matter wherein he is charged with having committed contempt of this court: 1. "By misbehavior as an officer of this court;" 2. "By resistance to the orders of this court in this cause;" that said charges are wholly without foundation, and are unsustained by the specifications set forth under each charge; and, were not the charges of so serious a nature, he would content himself with this simple denial; but as, although they are entirely unsustained by the specifications, yet, as they are aimed at his professional standing, which he most highly values, he deems it but simple justice to himself that the court should be fully advised in the premises, in order that the said charges may be treated with the reprehension they deserve.

Respondent admits that he is an attorney of this court,

and, under the laws, amenable for his professional conduct in any matter wherein he acts as an attorney of this court. He further admits that he has seen a certified copy of an order appointing the sheriff of Hamilton county receiver in this cause, and that he has been informed, and believes that the assets of the Ohio Life Insurance and Trust Company, remaining in their late banking house, had been taken possession of under said order, prior to the 30th day of October, 1858, and he further admits that he knew, from the report of James P. Kilbreth, receiver, appointed by the circuit court of the United States for the southern district of Ohio, in the case of *James C. C. Bell et al.* v. *The Ohio Life Ins. and Trust Co. et al.*, pending in that court; that on the 30th day of October, 1858, he had demanded of Richard Mathers the assets in his possession belonging to the Ohio Life Insurance and Trust Company, and that the said Mathers refused to deliver to him the said assets; and this respondent further admits that he did make a motion to the circuit court of the United States for the southern district of Ohio, that a rule issue against the said Richard Mathers and others, to show cause why they should not be attached for contempt in disobeying the orders of said court before that time made, in regard to the assets of the said Ohio Life Insurance and Trust Company, and that thereupon such rule was issued.

Your respondent, in admitting the knowledge of the facts, and of his action in the premises, expressly denies that he acquired any of such knowledge, or took such action in his professional capacity as an attorney of the superior court of Cincinnati, and would now respectfully show to the court in what manner and by what authority he has acted in the premises, in order that it may clearly appear how groundless are the charges made against him.

Your respondent represents that, by regular license, he is a practicing attorney and counselor in the circuit court of the United States for the southern district of Ohio, and he herewith presents the evidence thereof, in the certified

copy from the records of said court, marked exhibit "A;"* and that in his professional capacity, together with Henry Stanbery, he was retained by the firm of Bell & Grant, of London, and by them instructed to prosecute a claim which was then in judgment, in their favor against the Ohio Life Insurance and Trust Company. Under their instructions a bill was filed on the chancery side of the circuit court of the United States for the southern district of Ohio, wherein Jas. C. C. Bell et al. are complainants, and the Ohio Life Insurance and Trust Company et al. are defendants, which bill was signed as counsel by Henry Stanbery and this respondent, a copy whereof is hereto attached, marked exhibit "B."

Your respondent further shows that one of the prayers of said bill was for the appointment of a receiver to take the possession of the assets of the said defendants, the Ohio Life Insurance and Trust Company, and the granting a preliminary injunction, and that after service of process of subpena, and notice of application therefor (the evidence of both of which facts is hereto attached, marked exhibit "C.") the judges of the said circuit court of the United States, after a hearing, made an order granting an injunction restraining the defendants in said cause from, in any manner, disposing of said assets, and ordering them to retain the possession thereof until the further order of the court; and your respondent represents that, at the date of said order, the said assets of the said Ohio Life Insurance and Trust Company were in the possession and under the control of the defendants so ordered to retain them in possession. A copy of said order is hereto attached, marked exhibit "D."

And your respondent further represents that the said order made was prior to the order of this court appointing a receiver, and that the said circuit court, prior to the motion for the rule against said Mathers, hereinafter stated, had, after full hearing, decided that, by means of said order, they had acquired exclusive jurisdiction over said assets, and this

*The exhibits are omitted from this report, as they are not necessary to a full understanding of the case.—REP.

respondent alleges and fully believes that said jurisdiction was so vested in said circuit court.

Your respondent further shows that, subsequently, and after full argument and due deliberation, the said circuit court of the United States, on the — day of October, 1858, made another order in said cause, wherein they appointed James P. Kilbreth receiver, and commanded the defendants and all other persons to deliver to the said Kilbreth, receiver, any and all assets of the said Ohio Life Insurance and Trust Company in their possession, a copy of which is hereto attached, marked exhibit " E."

Your respondent further shows that the said Kilbreth qualified as receiver under the order of said court, as appears by a certified copy from the records of said court, marked exhibit " F."

Your respondent further shows that the said receiver, Kilbreth, in the performance of his duty, and under the orders of said court, endeavored to get the possession of said assets, and made a demand therefor, among others, on Richard Mathers, exhibiting to him his, the said Kilbreth's, authority as receiver from the said circuit court of the United States; but the said Richard Mathers, refusing to obey the order of the said court, then exibited to him, declined to deliver to the said receiver, Kilbreth, the assets of the said Ohio Life Insurance and Trust Company, in his possession, all of which appears from a certified copy of said receiver's report, hereto attached, marked exhibit " G."

Your respondent further shows that, upon the coming in of the report of the said receiver, he, in his professional capacity as counsel for the complainants in the said cause of *James C. C. Bell et al.* v. *The Ohio Life Ins. and Trust Co. et al.*, in the said circuit court, after, in open court, reading the said report, without comment, moved the court to issue a rule against the various parties named in said report, to show cause why they should not be attached for contempt, in disobeying the orders of that court in regard to the assets of the said Ohio Life Insurance and Trust Company; and

thereupon, the court took the said motion under considera-
tion, and the next day granted the same, and ordered this
respondent to draw up the entry for record; and thereupon,
in obedience to the order of said court, this respondent did
draw up an entry, and submitted the same for the considera-
tion of the court, which said entry, after examination, was
approved by the court, and the clerk thereof ordered to
record the same, a certified copy whereof is hereto attached,
marked exhibit " H."

Respondent further shows that, under the order aforesaid,
a rule issued against Richard Mathers and others to show
cause why they should not be attached for contempt, in disobeying the orders of the said circuit court, which rule is
now pending for argument before said court, and this
respondent has been professionally engaged, as aforesaid, in
pressing said rule, and he now respectfully avows his intention to continue to press said rule, according to the best of
his ability.

This respondent would now respectfully represent to the
court that, in all these proceedings, he has done nothing
meriting the censure of this court, either as an officer thereof
or as a private individual, but that in all the matters and
things, hereinbefore set forth, he has acted in his professional
capacity as an attorney and officer of the circuit court of the
United States, for the southern district of Ohio, and is answerable alone to that court in such capacity for the correct-
ness of his conduct, and he respectfully denies the power of
this court to regulate or control his professional conduct in
said court; and that while he has always heretofore been
ready to submit with cheerfulness to the order of this court
in regard to his professional conduct here, and will always
continue so to do, so long as he remains professionally con-
nected with the court, he yet feels it to be his imperative
duty, with equal readiness, respectfully to resist any attempt
to control his professional conduct in another jurisdiction.

This respondent further represents that all that he has
done in the premises has been in the conscientious perform-

ance of his duty as an attorney in the circuit court of the United States, and without any intention to commit a contempt of this court, or of its orders, or process, and he, therefore, prays that the rule against him may be discharged.

N. C. M'LEAN.

### ANSWER OF J. P. KILBRETH.

James P. Kilbreth, who has been served with a rule, in the above entitled case, to show cause why he should not be " attached for the contempt of court, for interfering with Richard Mathers, an officer of this court, in the discharge of his duties as receiver in the above stated action," hereby reserving and saving to himself all objections to the jurisdiction of this court to proceed against him, herein, and also to the want of any legal or proper charges filed against him herein, and to the manifest defect and generality of the charges that have been filed against him—for answer to the said charges and specifications, so filed herein against him, says : That he, this respondent, the said James P. Kilbreth, has not resisted the order, nor any order of this honorable court, made in the above entitled cause, nor has this respondent resisted any order whatever of this honorable court, and so this respondent says he is not guilty of resistance to the orders of this court in this, the above entitled cause.

In answer to the specification of the above general charge of " resistance," this respondent says : That by an order of the circuit court of the United States of America, for the seventh circuit and southern district of Ohio, made on the 28th day of October, 1858, in the case of *James C. C. Bell et al.* v. *The Ohio Life Insurance and Trust Co. and others*, then pending in the said circuit court, he, this respondent, was appointed a receiver to take the possession of all and singular the assets of the said Ohio Life Insurance and Trust Company, and the property of said company, both real and personal, by whatsoever name the same may be known and, wheresoever situated, including all moneys, rights, choses in action, evidences of debt, all books, papers and accounts;

and by the said order the said receiver was required, before entering upon the duties, to take an oath and give a bond as in said order set forth, a copy of which said order is hereto attached and made a part thereof; that he, this respondent, did take the said oath and give the said bond, as required by the said order of the said circuit court. That, afterward, on the thirtieth (30th) day of October, A. D. 1858, in open daylight, in the sheriff's office wherein were present, at the time, several of the deputies of said Mathers, the sheriff and said receiver, he, this respondent, without violence, without using threats of any kind, simply demanded of him, the said Mathers, after having first exhibited to the said Mathers a copy of the said order of said circuit court, the assets of said Ohio Life Insurance and Trust Company, then in his, said Mathers, hands—and to such demand the said Richard Mathers replied as follows:

" I hold assets of the Trust Company in my hands as receiver, under an order of the superior court of Cincinnati, and do not feel willing to give them up."

That this respondent in like manner made demand upon divers other persons, whom he, this respondent, believed to have had any of the said assets in their hands, and then, on the first day of November, A. D. 1858, the respondent made a written report of all of the demands aforesaid, and the answers given thereto, (including the said demand upon the said Mathers, and his answer thereto,) to the said circuit court, and did nothing further therein.

Neither did he, this respondent, through the instrumentality and by the assistance of said Nathaniel C. McLean, nor by any person or persons, or in any other manner, cause to be issued from the said circuit court, and served, a rule upon said Mathers, as is charged in the amendment to the said specification, but all he, the respondent, did in the premises, was to make the said true, and within report of what he had done in the discharge of his duties as such receiver.

. And this respondent says it is not true that he, in any

manner, resisted the said Mathers, in the discharge of his, the said Mathers, duties and office of, and as said receiver. Nor did he, this respondent, endeavor to procure the said Mathers to disregard the order of this honorable court, but all that he, this respondent, did to said Mathers, was to make the said demand of the said assets, as aforesaid. Nor did he seek to terrify the said Mathers by said demand, nor was it made in such manner as would terrify the said Mathers, or any other man; nor, in fact, was the said Mathers, by such demand, as this respondent believes, terrified, nor in any other manner prevented from, or resisted in carrying into effect any orders of this honorable court. Nor had he, this respondent, in making such demand, purpose or design, to resist or interfere with said Mathers, in carrying out or obeying any order of this honorable court.

And this respondent respectfully submits that, even if he, the said respondent, had any such purpose, which he denies, since he, the said Mathers was not resisted or interfered with as aforesaid, by such demand, he, this respondent, can not be punished by this honorable court for having, or entertaining a mere purpose or intention, which he did not carry into effect; and he, the said respondent, says that he has not in anything he has done, had any intent to treat with disrespect or contempt this honorable court, or any order made by it—but his only intent and design has been to discharge his duties as said receiver.          JAS. P. KILBRETH.

*Henry Stanbery*, for N. C. McLean.

*Haines, Todd & Lytle*, for J. P. Kilbreth.

STORER, J.   A rule having issued against the defendants to show cause, why they should not be attached for disobeying an order of this court, and interfering with its officer, acting in the legal exercise of his duty, they have appeared and answered the charge which was specifically stated, as

required by law, on the return of the rule; and have been fully heard by their counsel.

The determination of the questions involved, must depend upon the facts disclosed by the rule, and they are briefly these:

On the 14th day of October last, Spinning and Brown, who are creditors of the Ohio Life Insurance and Trust Company, filed their petition in this court, making the company, with their assignees, defendants. Subpenas were immediately issued, returnable on the 25th of the same month, and served upon the defendants on the 21st. On the 18th the following order was entered: "And now the plaintiffs come, and move the court to appoint a receiver in this cause, and having given to the defendants written notice that this motion would be made, and the defendants interposing no objections to the court making the appointment, but reserving the right to controvert the allegations in the petition which impeach their integrity, the court, for the purpose of preserving the property in the hands of the defendants, now appoint the sheriff of Hamilton county receiver, and direct him to take charge of said property, and hold the same subject to the order of this court, until this court shall be advised whom to appoint."

Under this appointment, the receiver took actual possession of 'the assets of the company, then under the control of the trustees, who surrendered the same to him, and immediately reported the fact to this court, with a schedule of all the property in his hands.

While this property was thus in his custody, the defendant Kilbreth, who, it is admitted, was advised of the order of this court, appointing the sheriff our receiver, demanded of him the property sequestrated, under a claim that he had received a similar appointment from the circuit court of the United States for the seventh circuit and southern district of Ohio, in a suit pending in that forum against the Ohio Life Insurance and Trust Company, and others, wherein Bell & Grant are plaintiffs. The demand was not complied with by

the receiver of this court, who informed Kilbreth he was acting as our officer, and should be governed by our decree.

After this demand and refusal, Kilbreth reported the same to the United States court, and on the 2nd day of November last, the defendant McLean, who is also an attorney of this court, as well as of the circuit court, moved the latter tribunal that a rule should be issued against the receiver of this court to show cause, why he should not be attached for a contempt, for not delivering to Kilbreth the property in his hands. At the time this motion was made by McLean he well knew that this court had appointed their receiver, and he was then retaining the custody of the property as our officer.

A rule was accordingly issued, and the receiver of this court has been, very summarily, brought before another tribunal, where, it is claimed, he is subject to whatever order may there be entered.

It will be readily perceived, that a State court and the highest judicial power in the Union are in direct conflict. The integrity of this forum, as a part of the sovereignty of Ohio, the validity of their decisions, their right to adjudicate matters submitted by litigants, their authority to issue process for the protection of their officers in the performance of their duties, are directly involved. We feel, we trust, the importance of the questions before us, and while we yield to none in our veneration for that court which has so long, and so ably illustrated the judicial character, we, nevertheless, must be permitted to vindicate within our own peculiar jurisdiction what we understand to be our appropriate functions. On this ground we are alike, independent of the courts of the United States, as they are of the State tribunals. Neither can claim superiority, nor infer even infallibility.

If, as was said by the eminent judge, in the Rosetta case, 6 McLean, 362 : "it has been considered as no degradation by the supreme court to follow the established construction of the local laws, by the courts of the States," we think it

can not be regarded as an assumption of power in a State court, if they claim to expound their code of practice, and determine its proper construction.

The defendants claim the rule should be discharged:

First, Because this court has no power, under the statute, to punish contempts like this in a summary way.

Secondly, Because the acts charged do not constitute what the law denominates a contempt.

Thirdly, That the circuit court had first obtained jurisdiction over the case, and appointed Kilbreth their receiver; that they had allowed an injunction to restrain the assignees of the Ohio Life Insurance and Trust Company from transferring the property now in the possession of our receiver, before he was appointed.

It is admitted the petition was filed in the circuit court on the 16th October. Process was issued thereon returnable to the 1st December following, which was served on the same day. On the 18th October, that court entered the following order:

"*Bell & Grant* v. *Ohio Life Insurance and Trust Company.*— On the motion of plaintiff the court do order that an injunction issue to said trustees and said assignees, ordering and directing them to stay further proceedings with respect to the assets of said corporation, and to hold the same subject to the further order of this court, and the application for receiver is continued until next Saturday."

On the 28th October, the defendant, Kilbreth, was appointed receiver.

On the first point, we have no doubt of our authority under the first section of the act of Feb. 24, 1834, Swan. 188, to punish in a summary manner any "disobedience or resistance to any lawful writ, process, order, rule, decree, or command" which may have been made, and entered upon our journal. The language of the statute is clear and unequivocal, and if no such power had been conferred expressly, we should hold, it was nevertheless inherent in this court as a part of its original constitution, indispensable to the proper perform-

ance of its duties, and without the possession of which its jurisdiction could never be vindicated.

To avoid the abuse of this power, not to impart the power itself, we suppose the law referred to was passed. We find it is but a transcript, with but few alterations, from the act of Congress of March 2, 1831, Brightly's Digest, 189, the first section of which provides the same remedy in the same words. Indeed, it would seem the defendants can not be permitted to deny the right of this court to proceed under a statute, for what is alleged to be a disobedience of their order, when the tribunal, under which they are acting, on a precisely similar law, have assumed the authority to deal very summarily with an officer of this court.

A denial of our legal ability to proceed, is virtually a denial of the power of the circuit court. Such a conclusion we believe the defendants would wish to avoid, and we will save them from the dilemma by admitting the construction claimed by the federal court.

The second objection to the rule, depends for its validity, on the question, whether a contempt has been committed.

To understand this question clearly, it is proper to refer to the parties, and ascertain what are the duties, and privileges of a receiver; how his acts are to be controlled, as well as the manner in which he is to be protected.

First. He is an officer of the court, and his possession is that of the court. The property sequestrated is a fund under the sole control of the court, who alone can order its distribution, and if necessary, its investment. 3 Daniels' Chan. P. & P. 1983; 9 Vesey, 335, *Angel* v. *Smith*; Edwards on Receivers 3; and 7 Paige, 513, *Noe* v. *Gibson*.

Secondly. It must follow that any attempt to interfere with, or disturb, the possession of their officers, directly questions the power of the court to appoint him; as well as their right to the custody of the property, of which he is the curator. The same rule applies in such a case, as obtains when sheriffs, trustees, or masters in chancery, under a judicial order, have been invested with the control of property

pending a litigation. The power to protect the agent neces-sarily results from the power to appoint him.

Hence it was settled by Lord Eldon, in *Angel* v. *Smith*, 9 Vesey, 336, " that it is contempt of court to disturb sequestra-tors," and, therefore, " no suit would be permitted by a third party, to be brought against the officer, or the possession, without leave." The ground of this objection is that a court of equity will not permit itself to be made a suitor in any other court; for it is very clear, if its receiver can be com-pelled to answer to another tribunal, its jurisdiction over the subject is directly controlled, its functions virtually sus-tained. Story's Eq. Juris. sec. 833 and sec. 891; 1 Keen 749, *Chalie* v. *Pickering*.

The principle referred to is very fully stated by Vice Chancellor Wigram in *Evelyn* v. *Lewis*, 3 Hare, 474, where an injunction was granted to restrain a party from proceed-ing against a receiver by suit at law. " He represents the interests of all the parties in the property, and it is his duty, therefore, to protect it for all who claim an interest, how-ever various, conflicting, or involved in doubt their interests may be." 1 Jac. and Walk. 176, *Brooks* v. *Greathed*; 2 Ball and B. 55, *Hutchinson* v. *Lord Massarene*; 2 Swan. 125, *Davis* v. *Duke of Marlborough*; 1 Hogan, 234, *Delany* v. *Mansfield*; 1 Hogan, 171, *Fitzpatrick* v. *Eyre*.

The English rule, so fully stated in the cases to which we have referred, has been followed, to the largest extent, in the American courts. 3 Paige, 199, *matter of Heller*; 5 do. 489, *matter of Hopper*; 7 do. 513, *Noe* v. *Gibson*; 8 do. 388, *Parker* v. *Browning*; 9 do. 372, *Albany City Bank* v. *Schermer-horn*; 1 Clarke's Chan. 297, same case.

In the late case of *Taylor et al.* v. *Carryl*, 20 Howard, 594, the supreme court of the United States say, " the English courts take efficient measures to maintain their control over the property within their custody, and support their officers, defending it with firmness and constancy. The court of chancery does not allow the possession of its re-ceiver, sequestrator, or custodee, to be disturbed by a party,

24

whether claiming by title paramount, or under the right which they were appointed to protect; as their possession is the possession of the court."

The question then arises, what is an interference with, or disturbance of, the possession of a receiver. We have already seen, that an action of ejectment, or any suit, the judgment in which may affect the custody of the property sequestrated, is never permitted. Neither would it be competent for a creditor to litigate his claim by any legal proceedings against the receiver; every such question being determined by the court, through the intervention of a master. Such proceedings, if allowed, would defeat the object for which the officer was appointed, and deprive the court of their control over the funds in his hands, as their custodian. It would be a denial of their right to distribute the fund itself, and thus complicate the litigation, by the introduction of new elements. Justice, tardy as it too often is, would be still longer postponed, if perchance it could ever be properly administered.

In the case before us, an attorney of this court, with full knowledge of its order appointing a receiver, and that the fund in controversy had been taken into his possession, has, upon his motion in another tribunal, obtained the allowance of a rule which has been issued and served upon an officer of this court, requiring him to show cause, why he should not be attached for not delivering over to another defendant, who alleges that he, too, is a receiver, the possession of the property, now under his control, by virtue of our order.

Mr. McLean, the attorney, and Mr. Kilbreth, the alleged receiver, are thus endeavoring to obtain, through the process of the federal court, that which they could not acquire by the action of replevin, or through the instrumentality of an injunction, and its subsequent writ of sequestration. Neither of these remedies would be permitted, as the circuit court is expressly forbidden by law the allowance of the latter, to stay the order of a State tribunal, and it would be a legal anomaly, if the former, under the circumstances before us,

should be adopted. He must be a bold man who would hazard such an experiment.

The rule, thus issued, has been served ; and the receiver of this court is before the circuit court, to offer an excuse, why he has not delivered to Kilbreth the property confided to him as our officer. The power of that officer is thus questioned, and our authority to appoint him practically denied, not only by the defendants, but by the tribunal they have invoked to aid them ; a tribunal, having no supervisory or .appellate jurisdiction over our decrees; to which we are, in no way, responsible, and with whom we have, at least in common, the largest concurrent jurisdiction over the subject in controversy.

In this view of the case, we.can not separate the defendants ; both were informed of the order of this court assuming the control of the fund in controversy, before the one was appointed receiver in the federal court, or the other had taken any steps to procure the demand to be made upon our officer, or the subsequent rule to compel him to deliver up the property in his hands, or be attached for a contempt.

Both have moved in the matter to effect a common purpose ; both have challenged the validity of our order, and are now attempting, through the summary powers of attachment, to disturb and interfere with what we alone have in custody ; and thus, instead of a direct appeal by any ordinary legal remedy—if such, indeed, can exist—there is an effort to control, through imprisonment, or whatever punishment might be imposed upon our receiver, the transfer of property which is in his possession as the mere bailee of this court.

In every case where an action at law, or a suit in chancery, under similar circumstances, should be instituted, there can be no doubt but all the parties implicated in the promotion of the suit or action are amenable to the court whose orders or decrees are disobeyed. There is no immunity for the counsel here, for he is charged with a knowledge of the order of this court, and is bound to respect and

obey it until it is reversed. If he advised any proceeding in conflict with it—if, by his instrumentality, such proceeding is instituted, and by his professional aid it is afterward carried forward or defended, he is equally subject to our legal censure, with the plaintiff in whose name such proceeding is brought, and who claims to be benefited by its institution.

And it can not be said that if the tribunal appealed to by the defendants was one of independent jurisdiction, they are protected by its orders, having done no more than they were authorized to do by that forum; for it is clear that the appointment of the receiver or the interference of the attorney was not imposed upon either by the command of the federal court. The act, in each case, was purely voluntary; either of the defendants could have declined the office they have severally filled. They might have known, when they acted in the matter, to what result a conflict of judicial power must, necessarily, lead, and it is to be presumed they were prepared for the consequences.

Besides, the mere filing of the bill in the circuit court, of itself, did not affect any right belonging to this court, nor can we suppose an injunction, or an order appointing a receiver, would have been granted as a matter of course. It is only when the aid of the circuit court is invoked, by subsequent motion, these important remedies are given. They were obtained, like every other subsequent order, on the application of counsel only, who are responsible for their interference, when its necessary result is to control our jurisdiction, or disregard our decree.

It is but the ordinary legal principle by which all are held culpable who originate, set on foot, prosecute, or finally consummate any purpose which is opposed to the law of the land, affects the rights of individuals, or obstructs the administration of justice. In such cases all are principals, and alike amenable for their conduct to the proper tribunal.

But we might have been saved the expression of any opinion upon this point, and sustained our power, if we

were disposed, by the action of the circuit court in this very matter. If their receiver is justified, and the attorney also who has moved the rule, on the ground they were officers of that court, our receiver is alike justified by our order, and ought equally to be protected; and yet he is required to answer before the circuit court. If the argument is worth anything there, it is equally available here. The defendants may select either horn of the dilemma; but they cannot stand upon both.

The third ground taken by the defendant is the denial of jurisdiction on the part of the judge, who made the order at special term. This denial is not based upon the want of power, in the organization of the court, but is confined solely to the fact, that our jurisdiction depended on the service of the subpena, or the appearance of the parties made defendants, in the suit of Spinning and Brown. It was admitted the action was commenced here by a petition filed; on the same day a summons issued; on the 18th October, the defendants being then personally in court, the order appointing the receiver was made; on the 16th, Bell and Grant instituted their suit in the circuit court, by filing their bill, upon which subpena also issued, and was served; on the 18th that court granted the injunction, to which we have already referred, and their order was entered within the same hour that a similar order was entered in this court. The proposition therefore may be thus stated: A State court in the administration of justice, with authority to decide every question in the controversy before them, has acted as they believe in accordance with the code of practice which defines the mode of their proceedings; their action it is claimed is invalid, because, as it is alleged, the provisions of the code have not been pursued.

It is even said, this court has hastily, and without sufficient consideration, made an order, not warranted by the condition of the parties when it was entered, though clearly within their general power conferred by statute, as well as the usages of law. If this is a fair exposition of the ground

374　　SUPERIOR COURT OF CINCINNATI.

Spinning & Brown *v.* O. L. I. & T. Co.—In matter of Contempt.

assumed, it would seem, that we have only erred in the construction of our powers; yet for this error, a federal tribunal is deemed competent to interfere, and take exclusive control over the subject in litigation, thus virtually reviewing and reversing our decision, without any appellate power to do so. We had supposed by a series of well considered decisions, the United States courts had admitted the exclusive right of the State courts to construe their local laws and usages, where no constitutional power was involved; but a long established comity is now ignored, or the rule made flexible to suit a particular case; the judgments of courts are to be collaterally examined, and are no longer conclusive upon the subject-matter they profess to have determined.

One of my colleagues has already decided the question before us, and we fully accord with the opinion he has given. In ordinary cases, we should have left the point, as we find it determined, but we feel it to be our duty, under the circumstances of this case, to vindicate again our jurisdiction, and present the grounds upon which we rely to sustain it. My colleague holds that our jurisdiction attaches in a case like this, from the filing of the petition, which he regards in contemplation of law, as the commencement of the suit. This construction is opposed by the defendants, who insist that the power to decide does not exist, until the defendants are served with process or voluntarily appear.

There can arise, therefore, but a single question for our consideration. When did this court obtain jurisdiction?

By the 55th section of our code of practice, " a civil action must be commenced by filing in the office of the clerk of the proper court a petition, and causing a summons to issue thereon." No distinction is made between legal and equitable remedies. The same mode must, therefore, apply to both.

In *Sheldon* v. *Newton*, 3 Ohio S. 499, it is said : " The power to hear and determine a cause is jurisdiction ; and it is *coram judice* whenever a case is presented which brings this power into action." This language is a transcript of the opinion of

Judge Baldwin, in the Arredondo case, 6· Peters, 709, who remarks, " If the petitioner states such a case in his petition that, on demurrer, the court would render judgment in his favor, it is an undoubted case of jurisdiction : whether on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case, is the. exercise of jurisdiction conferred by filing of a petition containing all the requisites, and in the manner prescribed by law."

The same learned jurist, in 12 Peters, 718, *State of R. I.* v. *State of Mass.*, reaffirms the doctrine. " Jurisdiction," he observes, " is the power to hear and determine the subject-matter in controversy. If the law confers the power to render a judgment. or decree, then the court has jurisdiction. What shall be adjudged or decreed between the parties, is judicial action."

Such we. understand to be the· law of jurisdiction. It exists by the creation of the court, and the powers conferred upon it to hear and. determine causes; but when and how the power is to be exercised, depends upon the process by which parties invoke its aid.

The filing of the petition, therefore, setting forth a cause of action, and asking the tribunal with whose clerk it is filed, to take cognizance of the case, is, necessarily, the first step; and when process subsequently issues, it is by the command of the court, and, therefore, a further exercise of its jurisdiction; indeed, the filing of the petition is a demand of right, on the part of the plaintiff, that the court shall. entertain and decide his cause. They have no option—the law is imperative—the responsibility can not be avoided. The suit, then, is before the court, awaiting its ordinary action, until it is finally determined—every step of its progress being a new exercise of the jurisdiction acquired by the filing of the bill.

This view of the question is confirmed by an examination of the ancient law. " In all cases the writ alone gave jurisdiction to the justices, and equally defined its limits." Spence's Eq. Jur., 227, 230; "and when the original writ

was dispensed with, and suits by petition or bill became a common course of procedure, the action was said to be commenced," ibid. 338, 369; "a suit on the equity side of the court of chancery, is commenced," says Mr. Daniels, "by preferring a petition, containing a statement of plaintiff's case, and praying relief;" 1 Chancery Pleadings and Practice, 1.

Such, also, we understand to have been the construction given to the rule, in all the States of the Union, with the exception of those courts who felt constrained, by statute or prevailing usage, to adopt a different application.

When the code of procedure was enacted in New York, which required, "that each defendant should be served with process before the action should be deemed to be commenced," it had been the universal practice to regard the issuing of the writ, or filing of the bill, as the commencement of the action. 1 Barb. Ch. Practice, 33; 1 Graham's Practice, 502.

In 3 John. Cases, 146, *Carpenter* v. *Butterfield,* Judge Thompson held "that the issuing of the writ in a cause, as to every *material purpose, whatever,* was the commencement of the action."

So in 8 Cowen, 205, *Hogan* v. *Cuyler,* Judge Sutherland said: "It is perfectly well settled that the issuing of the *capias* is for all essential purposes the commencement of the suit."

And we find no exception to this doctrine in the courts of New York until the adoption of the code. A similar rule prevails in Massachusetts, 1 Pick. 202, *Ford* v. *Phillips;* 21 Pick. 241, *Swift* v. *Crocker;* so in New Hampshire, 2 N. H. 228, *Society, &c.* v. *Whitcomb;* in Kentucky, 6 Monroe, 559, *Thompson* v. *Bell;* in Vermont, 7 Ver. 428, *Day* v. *Lamb;* in Main, 7 Greenleaf, 370, *Johnson* v. *Farwell;* in New Jersey, 3 Harr. 174, *Whitaker* v. *Turnbull;* in Illinois, 1 Scam. 31, *Feazle* v. *Simpson;* in Pennsylvania, 9 Watts & Sergeant, 51, *Caldwell* v. *Heitshu.* In Connecticut service is required to be made; and the reason of this departure from the ordinary rule, is explained in 4 Conn. 149, *Jencks* v. *Phelps.* It was demanded by the peculiar practice of the

courts in that State, and the judge who decided the case, expressly admits it is an exception to the established doctrine.

If the commencement of the suit brings into activity the jurisdiction of the court, all subsequent proceedings therein, whether operating upon the subject-matter or the parties, must be referred to that date.

But my colleague, it is announced, has given a hasty opinion, excusable, no doubt, in the hurry of official business—perhaps the pressure of his engagements, while holding a nisi prius term. We admit the arduous duties imposed by the position he holds, and the constant demands upon his intellect, but we are not satisfied that he has not thoroughly examined all the questions submitted to him, and decided them according to his convictions of what the law requires at his hands. If hasty opinions have been given, he is not the only jurist obnoxious to the imputation.

It was said in *ex-parte Robinson*, 6 McLean, 363, that "there is no instance, it is believed, where a federal court has disregarded the decisions of a State court, where it possessed no apellate power;" and the remark was but the expression of what had long been the established practice when the State courts and the federal have been in conflict. Both deferred to the other; neither were disposed to pronounce "*ex cathedra*," that the other had exceeded its jurisdiction in deciding upon questions of practice and pleadings. Such, we suppose, was the usual comity between courts of concurrent jurisdiction. We fear, however, a point has been reached when the rule of courtesy has been superseded by a claim of right to sustain one jurisdiction by the sacrifice of the other. We can not disguise what must be obvious to every one who has considered the state of things disclosed in these proceedings, that an attempt is now made to test the authority of a State tribunal to act in a case within its own jurisdiction, and where its power is legally invoked, by an assertion of a prior right, on the part of a federal court, to decide the same case.

If a conflict must come, while we shall not be the first to

precipitate it, we hope we have sufficient self-respect not to yield our convictions, unless required to do so by a tribunal, competent in law to review our decrees.

It is asserted my colleague has not properly understood the meaning and effect of our code, and a collocation of various clauses is resorted to in order to justify the assumption. Thus sec. 2 of title 2, ch. 4, is quoted, where it is said, "an action shall be deemed commenced, within the meaning of this title, as to each defendant, at the date of the summons, which is served on him or on a co-defendant, who is a joint-contractor, or otherwise united in interest." This title refers to the time of commencing an action, in other words, prescribes the various limitations for every real or personal right, taking the place of the usual statute in such cases.

We are also referred to secs. 78 and 79, defining when the action shall be regarded as pending, so as to charge third persons with notice, in which case, to be effectual, process must be served.

The clauses, it is said, must be taken in connection with section 55, and construed " in pari materia," the necessary result of which will, we are told, control the meaning to be given to the last section, so as to require a service to be made before the action can be said to be commenced.

Let us admit for a moment the argument, and what does it prove? The omission to state a fact by the framers of the code, must be regarded by a comparison of other clauses of the same law, to express a different rule than the language of section 55 clearly indicates. We had supposed that a collocation of different statutes, to ascertain the meaning of the law-maker, was only permitted when an act was obscure or doubtful, or could not be justly interpreted without resort to the rule; we have never yet known it to be claimed that an unequivocal expression of legislative opinion could be changed by construction.

We are referred to 3 Ohio, 240, *Ludlow* v. *McBride*; 7 do. 414, *The State* v. *Bryce*; 12 do. 253, *Adams* v. *Jeffries*, to

prove that courts must have jurisdiction before they can judicially act. This proposition, we suppose, was never before doubted, nor do we understand why it is now necessary to vindicate it by authority. We understand the question before us is, Has jurisdiction attached? If so, in what tribunal? At this point, we might well inquire, why sections 238 and 239 of the code permit this court to allow a restraining order, whenever the petition is filed, if the circumstances before them require, without the service of process or the appearance of the defendant, and why it is, by the established practice, a receiver even may be appointed, if the emergency demand it, at the same stage of the proceedings? No other reason, we apprehend, can be given, but that jurisdiction must attach with the filing of the petition.

As our construction of the code is freely discussed, it may not be improper—we trust it will not be deemed derogatory to the circuit court—if we examine, and, if possible, understand, when the jurisdiction in that tribunal is first taken. However vast its powers, the federal court is still limited in its jurisdiction: all its authority over the person, as well as the subject, are conferred by statute. It has none by consent of parties—much less by implication. It is said by Judge Story, in 6 Peters, 658, *Boyle* v. *Zacharie et al.*, "that the remedies, in equity, are to be administered according to the practice of courts of equity in the parent country, subject, of course, to the provisions of the acts of Congress, and to such alterations and rules as, in the exercise of the powers delegated by those acts, the courts of the United States may, from time to time, prescribe."

By the act of March 2, 1793, it was made lawful for the several courts of the United States to make rules and orders directing the return of writs and processes, the filing of declarations and other pleadings, and to regulate the practice generally, as shall be fit and necessary for the advancement of justice.

In accordance with the statute, the circuit court have, by

the approbation of the supreme judges, adopted rules, one of which is quoted, as determining when jurisdiction commences. The 16th rule (see Holcomb's Dig. 28), provides, "Upon the return of the subpena as served and executed upon any defendant, the clerk shall enter the same upon his docket as pending in the court, and shall state the time of entry." This is not the only rule in the code. The first declares "the circuit courts, as courts of equity, shall be deemed always open for the purpose of filing bills, etc., and all other proceedings, preparatory to the hearing of all causes upon their merits." The 12th rule provides, "Whenever a bill is filed, the clerk shall issue the process of subpena, as, of course, on the application of the plaintiff." If we understand these rules, they do not conflict with each other, nor yet limit the power of the court over the person or subject, by the service of the subpena. The suit may have been legally brought, and jurisdiction taken by the filing of the bill, as in the English chancery. Since they were adopted, it has been often held that where aliens, or non-residents, have commenced their actions, no subsequent change of domicil to the State where the suit is brought, will deprive the court of jurisdiction; that having attached when the bill was filed, it continues, notwithstanding any future disability. 2 Wheaton, 290, *Morgan's heirs* v. *Morgan;* 9 do. 537, *Mollan* v. *Torrance;* 8 Peters, 1, *Dunn* v. *Clarke;* 6 do. 709, *U. S.* v. *Arredondo,* where the court say, "The petition presented by the claimant contains a full statement of all the matters required by the first section of the Missouri law. The superior court of Florida then had jurisdiction of the petition, to hear and determine the same, according to the principles of justice, and the laws and ordinances of Spain."

In 13 Peters, 136, *Wallace* v. *McConnell,* it was held, "That the jurisdiction of the district court of the United States, and the right to prosecute a suit, having attached by the commencement of the suit in that court, the right could not be taken away or arrested by any proceedings in another court. An attachment of the debts by the process of a

State court, after the suit was commenced in a court of the United States, could not affect the right of the plaintiff to recover." In this case, Judge Thompson said: "The priority of the suit will determine the right; the rule must be reciprocal, and where the suit is commenced prior to the institution of proceedings under attachment in another court, such proceedings can not arrest the suit. The maxim ' *Prior est tempore potior est jure,*' must govern the case," p. 151. Judge Drummond, in *Thaxter* v. *Hatch,* 6 McLean, 69, holds to the same rule; so in the admiralty, the filing of the libel in the district court is regarded as the commencement of the action. ' Conkling's Adm. Law and Prac. 417. It does not appear to us, from these adjudications, that the jurisdiction, even of the circuit court, does not attach by the filing of the bill, as in the English chancery is the admitted doctrine. When the federal court is invoked by a suitor, either at law or in equity, the statute which organizes the tribunal requires that process shall issue, tested by the chief justice, commanding the defendants to appear, and the marshal to serve the writ; and it must be the logical conclusion that this is an exercise of power which is in reality jurisdiction taken over the subject.

There is no doubt but the forum which first assumes to act, or takes cognizance of the case, has begun to exert its jurisdiction. If its process is to be served, it may compel its officer to execute it, if within his power to do so, and punish him should he neglect or refuse. This power to inflict punishment necessarily follows the assumption of jurisdiction, consequent upon the filing of the bill. When this fact is ascertained, every other court, as a universal rule, refuses to interfere. The leading case which affirms the rule is that of *Payne* v. *Drewe,* 4 East. 523, where Lord Ellenborough lays down the principle without any reservation. It has been followed by the supreme court of the United States, in *Smith* v. *McIver,* 9 Wheat. 532; *Hagan* v. *Lucas,* 10 Peters, 400; *Shelby* v. *Bacon,* 10 How. 56; *Brown* v. *Clarke,* 4 How. 4; *Peck* v. *Jenness,* 7 do. 612; *Pulliam* v. *Osborne,* 17

Howard, 471. These decisions proceed upon the hypothesis that a court "has taken jurisdiction," which we understand to mean when they have commenced to exercise it. The doctrine is this, as it is so clearly stated by judge Grier, in *Orton* v. *Smith,* 18 Howard, 266, "where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right can not be arrested or taken away by proceedings in another court: it has its foundation not merely in comity, but necessity. If one may enjoin, the other may retort by injunction, and thus the parties be left without remedy."

Our own supreme court, in 16 Ohio, 404, 405, *Merrill* v. *Lake,* recognize the same doctrine, which is now the settled law, as received by the profession. We know of no exception to the rule.

This court, we are satisfied, had entire jurisdiction of the subject-matter when they made the order: the defendants had appeared, and were then personally in court. Every judicial act must, therefore, relate to the filing of the petition. The circuit court had, certainly, no cognizance of the matter until the 16th October, and though process in the action then commenced was served prior to the 18th, that fact could not deprive this court of its right to proceed.

A case very similar is found in 4 Gill & John. 497, *Brown* v. *Wallace,* decided by Chancellor Bland. "There is no instance," he observes, "to be met with, in which either one of the English courts has ever attempted to hinder or stay any part of the proceedings in a suit rightfully instituted, and which was then progressing in the other; nor has it even been intimated that either of these courts would call before it the parties to a suit depending in the other, to give an account of acts done under the authority of the other; or to have the money or property with which the other was dealing, or which was in the hands of its officers or agents, brought in to be there disposed of by itself." This is affirmed in 1 Md. Ch'y Decis. 353, *Brooks* v. *Delaplaine;* 2 do. 42, *Winn et al.* v. *Albert et al.*

We may suppose the suits to have been commenced at the same time—both courts having concurrent jurisdiction— still it must follow, from the principle we have stated, the process or order of the tribunal which has first seized the property must hold it. This is the ruling in *Shelby* v. *Bacon*, already cited, where it is said, " If two courts have concurrent jurisdiction, the one which first obtains possession of the subject must adjudicate, and neither party can be forced into another jurisdiction." " So, when co-ordinate liens exist in both federal and State courts, the first seizure, whether by sheriff or marshal, gives priority." 17 Howard, 475, just quoted. " The first levy fixes the right to hold the chattel." 4 Howard, 4; *Brown* v. *Clarke.*

The same view is taken by our supreme court, in 11 Ohio, 275, *Miers* v. *The Zanesville and Maysville Turnpike Co.* " A single suit," it was there held, " *lawfully instituted,* gives jurisdiction to the court to sequester the whole tolls; as the court in Muskingum had power to appoint a receiver, to seize the tolls of the company, his authority extends throughout the State, wherever it may be necessary to exercise it, and the court who appointed him will protect him in the exercise of his power. If, then, the plaintiff in that suit has secured a priority, he has drawn within the jurisdiction of that court the whole administration of the fund, which that receiver may control; until he, and those who are permitted to become parties to his suit, have exhausted the assets, or obtained the object sought by his bill. It is, then, necessary to look to the question of priority, and determine by what it is acquired. This bill was filed first; but the decree rendered and the receiver first appointed in the other. We think that he whom the law first authorizes to receive the tolls should be protected in his possession, and we find the statute operates to confer this power by the decree."

This, we suppose, is but the affirmation of an established rule in equity, that a receiver will not be appointed over a receiver. 1 Hogan, 199, *Valle* v. *O' Reilly;* ib. 259, *Irving* v. *Waller;* 2 Paige, 342, *Osborn* v. *Heyer et al.*

It is admitted that the receiver in the circuit court was appointed after the receiver in this court had seized the property, and had it in his possession several days, and we have no doubt he is the proper person to retain it. Indeed, from the published opinion of the learned judge, who holds to the contrary, it seems to us the admission is, nevertheless, made, and the point in controversy surrendered, unless the granting of the injunction by the circuit court, on the same morning the receiver was appointed here, vested the right in that tribunal to control the specific property. The effect of the injunction can not, upon any legal principle, be equivalent to a sequestration of the fund. The one merely restrains the parties from the commission of an act, leaving them, meanwhile, in the exclusive possession of the subject; the other divests the defendants of all possession, as well as title. The one is a preventive remedy only—the other a legal seizure of the thing in controversy. Both are regarded as distinct proceedings, and are frequently resorted to at the same time, in aid of each other. Thus, in 2 Paige, 342, *Osborn et al.* v. *Heyer et al.*, " where two creditors had filed separate bills to reach the property of their debtor, and in one suit a receiver was appointed, in the other an injunction granted restraining the debtor from parting with his books and papers, and from collecting his debts, it was ordered that the defendant should deliver over the property in his hands to the receiver, notwithstanding the injunction."

No case, we believe, can be found where an injunction has been held to work a change of possession or entitle a party to claim it. It operates "*in personam*" only; and this must have been at one period in the progress of the present case, we think, the opinion of the circuit court. We are advised that that forum has already dismissed the trustees and assignees of the Ohio Life Insurance and Trust Company, when arraigned under process for disobedience of the injunction, although it appeared these trustees had transferred the fund in their hands to our receiver, in de-

fiance, it was said, of the order of that court. If this has been done, and the parties enjoined are not held for any contempt, it is difficult to understand upon what ground the receiver of this court, not a party to the bill in which the injunction was granted, can be charged with disobeying it. If the holders of the fund are blameless in transferring it, it must follow that the person to whom it is assigned is equally excusable.

The order of this court, like process of execution, protected the trustees in the delivery of the property to an officer; they could not be involved, therefore, in any legal difficulty, as they acted involuntarily. The same order must, in like manner, shield our receiver, or, in plainer language, authorize the court itself to take possession of and administer the fund.

Much has been said of the circumstances under which one of my colleagues made the order, as well as what transpired in the circuit court when they allowed an injunction. There seems to have been great haste with all parties. It may have been a race of diligence, and if no unfairness was used, the effort of counsel to obtain a legal advantage is not to be deprecated. But we can not look out of the case, or take notice of suggestions made in the argument, which impeach the integrity of any of the parties. In this stage of the proceedings they are not pertinent, and will be disregarded by the court; nor need we trouble ourselves to defend any member of this tribunal from the imputations counsel or clients may think proper to make. We will only say, such discourtesy always recoils upon those who exhibit it, and is alike unworthy the bench and the bar.

The administration of justice is confided to our hands; we know no distinction of persons, nor shall' we refuse to exert all the power we properly possess to aid the humblest suitor before us. We can not, if we would, surrender our jurisdiction over the subject in controversy, when we are satisfied we have the right to retain it, and our own judgment is to be exercised to ascertain whether the right exists. We

25

adopt the language of the supreme court of the United States, in *Hyde et al.* v. *Stone*, 20 Howard, 175, as embodying our conception of judicial duty. " The courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them in every case to which their jurisdiction extends. They can not abdicate their authority or duty, in any case, in favor of another jurisdiction."

In whatever light we have been able to consider the question before us, we are forced to the conviction, that the means attempted to be used by the defendants, and which have been used against the receiver of this court, directly affect our right to hear and determine the controversy before us; our jurisdiction is denied, and without the power to reverse our orders, an effort is made by another tribunal to withdraw from our custody property which has been already sequestered by our decree; the possession of what our own process has imparted, which we have, perhaps, directed to be deposited in bank, or locked up in the vault of our receiver, may thus be taken from us; or, if we resist the assumption, the power which undertakes to control us may resort to force. This is the inevitable crisis, and it becomes those who begin the conflict to calculate the result.

It is the first instance, we believe, in our judicial history, where such a course has been pursued; we believe the books will be examined in vain, for a parallel case.

When our power was disputed, the proper mode to adopt, was to move this court, to set aside their order, on the ground the jurisdiction over the fund had attached in the federal court: this step it seems, was taken, and there is an answer on file, upon which such a motion was made, and after argument overruled. This answer sets forth all the facts, which are now relied on to sustain the power of the circuit court.

After this it can not be permitted that our jurisdiction shall be invaded by processes of contempt against an officer who is only acting as we have directed, whose only fault is the faithful discharge of his duty.

We have already said the questions raised in this con-

troversy are as novel as they are important—novel, as they present for the first time, for the last half century at least, the claim of a co-ordinate court to attach and punish the officer of another for serving its process; novel, as it is attempted by a federal court to reverse the orders and decrees of a State tribunal of equal jurisdiction, and, so far as power over the subject is concerned, of equal dignity; novel, as the effect of an injunction is held to be equivalent to a seizure of the subject; not a restraint only upon the defendant against whom it issues.

. Our duty is plain. If we permit the course pursued by the defendants to pass without rebuke, we may, for all practical purposes, surrender our whole judicial power, leaving the construction of our practice to be decided by other courts, who without any appellate authority, may yet choose to exercise a general superintendence over State institutions.

We have approached the subject and examined it with, as we believe, a proper sense of its importance. We have weighed every argument, and taken our own time to reflect upon the facts. Our deliberate conclusion, upon the whole case, is that the defendants have shown no cause, whatever, why they should not be amenable to this court for a disobedience of their process, as well as an attempted interference with the possession of our receiver. Even since the hearing of the argument, we are advised by the report of the receiver, he has been compelled to appear before the circuit court, and required, by that forum, to deliver over to one of the defendants the property in our possession, the order for which that defendant has served in person. This is but the necessary consequence of the original motion, on which the process of the circuit court has issued. The whole proceeding has but reached its natural result. We, therefore, hold both defendants are in contempt, and should be dealt with, accordingly.

An attachment is ordered against both defendants, but the court will hereafter direct when it shall issue.

Attachment ordered.

FINAL ORDER APPOINTING TRUSTEES AND DISMISSING ALL PRO-
CEEDINGS IN THE PENDING CAUSE.

" This cause came on to be heard by consent of the parties,
and, it being made to appear to the court, by the declara-
tion of the said defendants, Chas. Stetson, John C. Wright,
Samuel Fosdick, Samuel J. Broadwell, George Crawford,
Abraham M. Taylor, and Clement Dietrich, heretofore made
in open court, as well as by their answers on file, that they,
as assignees of the said Ohio Life Insurance and Trust Com-
pany, created by the deed of that company, dated 26th day
of September, 1857, have submitted to the judgment of this
court the further administration of the trust confided to
them as aforesaid, to be managed as this court may direct.
It is, therefore, ordered and adjudged that James P. Kil-
breth and Charles Remelin, disinterested persons, be and they
are hereby appointed trustees of the assets and property
which were of the said trust company, in the place of the
above named assignees, who have surrendered their trust as
aforesaid, with all the rights and powers conferred upon said
assignees, by law, and by the said deed of assignment, as
well in relation to the property, assets and liabilities of said
trust company, in the State of Ohio, as elsewhere, but sub-
ject to the outstanding contracts and liabilities, for rents,
counsel fees and other expenses, made and incurred by said
assignees, in the execution of said trust prior to the surren-
der thereof, as aforesaid ; and the said trustees, hereby
appointed, shall proceed in the administration of said trust
according to law, with the diligence requisite to make the
assets available for the benefit of the creditors.    But, before
entering upon the discharge of their duties, the said trus-
tees shall be sworn duly to perform the same according to
law, and shall, moreover, enter into separate undertakings,
with sureties to be approved by the court, in the penal sum
of fifty thousand dollars each, payable to the State of Ohio,
for the benefit of all parties interested in said trust, and con-
ditioned each for the faithful management of said trust, and

the proper accounting for all moneys that may come into their hands as trustees."

" And it is further ordered that said Stetson, and his associate assignees, have permission to withdraw from the documents and effects now in the hands of the late sheriff (Mathers), as receiver, any private property of theirs, or of either of them, and, also, their vouchers for acts done by them in the due execution of said trust, while in their hands, giving receipts to said Mathers, specifically describing the property so to be withdrawn. "

· " And it is further ordered, that said defendants, the Ohio Life Insurance and Trust Company, and said Stetson and others, assignees as aforesaid, shall, within ten days after notice of the qualification of the trustees hereby appointed, execute and deliver to them, for the benefit of all the creditors and stockholders of the said Ohio Life Insurance and Trust Company, a deed conveying to them in trust, as aforesaid, all the real and personal property, assets and choses in action, which were of the said trust company, and were assigned to the said Stetson and others as assignees, by said deed of assignment of the 26th of September, 1857, as the same remain not disposed of under said assignment."

" And it is further ordered, that Richard Mathers, heretofore appointed receiver in this case, shall, on demand of the trustees hereby appointed, and notice of their having been duly qualified, hand over to them the cash, books, choses in action, and other property which belonged to said trust company, and now in his hands, deducting therefrom any amount heretofore paid by him under the order of this court, passing over, instead of cash, the vouchers he holds for every such payment. He is also allowed to deduct from said cash the sum of one thousand dollars, now allowed him by the court for his services as receiver, and the further sum of two thousand three hundred and two dollars allowed him for his payment of taxes, expenses, and fees of counsel, incurred in keeping and defending the said property while in his hands, he giving said trustees duplicate certificates

therefor, one for the trustees and one to be filed in this court; and when said receiver shall have performed the things required of him by this order, and made due report thereof to this court, and it shall be made appear that the proceedings for contempt against him and others, for acts done under the orders of this court are dismissed, the said Mathers shall stand discharged from further duties, as receiver, under his said appointment; and it being made, further, to appear that the circuit court of the United States, for the seventh circuit and southern district of Ohio, have ordered that there be paid, by said Richard Mathers, receiver, to James P. Kilbreth, out of the said assets, the sum of three hundred and sixty-seven dollars and sixty-five cents for all costs, counsel fees and expenses, incident to his said office as receiver appointed by that court; it is further ordered, that the trustees now appointed shall pay out of the assets which may come to their hands the said sum of three hundred and sixty-seven dollars and sixty-five cents, taking therefor, from said Kilbreth, triplicate receipts; one copy for themselves, one to be filed in this court, and one for said assignees. It is also ordered that said Richard Mathers, receiver, out of the assets in his hands, pay the costs of this cause; and it is further ordered, that said trustees shall immediately take under their control the suits pending, and judgments for and against the said trust company and said assignees or either, in the State of Ohio and elsewhere, and manage the same for the benefit of the trust."

" And this court being satisfied that the proceedings for contempt in the circuit court of the United States, for the seventh circuit and southern district of Ohio, against Richard Mathers and several others, have been dismissed and the parties discharged therefrom; and being further satisfied, that James P. Kilbreth and Nathaniel C. McLean, against whom proceedings for contempt are now filed in this court, did not, in any act of theirs, intend to bring this court into contempt or unlawfully to oppose the execution of its orders,

do order that said proceedings be dismissed, and that said Kilbreth and McLean go discharged thereof without day."

" As to all matters not provided for in this decree, it is or- dered that the petition of the plaintiffs and the several cross- petitions filed in this cause be dismissed without prejudice, and this decree shall not be understood, taken, or construed as determining any question, either for or against the said assignees, as to any alleged mismanagement of said trust fund while in their hands—the design being to leave those questions without prejudice to either party by this decree."